GLADYS GUERRIDO GARCÍA, demandante y recurrida, *v.* UNIVERSIDAD CENTRAL DE BAYAMÓN y AMERICAN INTERNATIONAL INSURANCE COMPANY OF PUERTO RICO, demandada y recurrente esta última.

*Número:* CE-94-448 *Resuelto:* 30 de mayo de 1997

338

*Carlos Martínez Texidor*, de *Martínez-Texidor & Fuster*, abogado de la recurrente; *Enrique Arias Maldonado* y *Nidia Miranda Graterole*, abogados de la Universidad Central de Bayamón, recurrida; *Ángel Marrero Figarella*, abogado de Gladys Guerrido García, recurrida.

EL JUEZ PRESIDENTE SEÑOR ANDRÉU GARCÍA emitió la opinión del Tribunal.

La codemandada American International Insurance Company of Puerto Rico (en adelante American) presentó ante nuestra consideración un recurso de *certiorari*, con respecto a una Resolución de 19 de mayo de 1994 dictada por el anterior Tribunal Superior de Puerto Rico, Sala de Bayamón, en la que se denegó una solicitud de sentencia sumaria presentada por dicha compañía. Concedimos un término a la parte demandante recurrida para mostrar causa por la cual no debía revocarse la decisión recurrida y, en su lugar, dictar sentencia sumaria a favor de la compañía de seguros en la cual se desestime así la reclamación en su contra. Así lo ha hecho la parte demandante recurrida, como también ha comparecido la codemandada recurrida Universidad Central de Bayamón (en adelante la U.C.B.), por lo que estando en condiciones de resolver el recurso presentado, procedemos a así hacerlo.

I

El 29 de octubre de 1992, Gladys Guerrido García presentó una demanda por daños y perjuicios contra la U.C.B., en la que alegó haber sido suspendida de forma injustificada y sin la celebración de una audiencia, según lo requiere el propio reglamento de la universidad. La U.C.B., por su parte, contestó la demanda y negó las alegaciones esenciales en su contra; argumentó que la expul-

sión se debió a que la demandante violó las normas disciplinarias de la institución por hechos ocurridos el 20 de junio de 1990.(¹)

Así las cosas, el 18 de marzo de 1993, la señora Guerrido enmendó su demanda e incluyó como codemandada a American y alegó en su contra que dicha compañía tenía una póliza que cubría los daños reclamados.

American, por su parte, compareció y presentó una moción de sentencia sumaria en la cual alegó que, si bien era cierto que tenía expedidas dos (2) pólizas a favor de la U.C.B., ninguna de ellas cubría los riesgos que se alegaron en la demanda: la primera de ellas titulada *Directors and Officers Insurance and Company Reimbursement Policy*(²) y la segunda póliza, *Multi-Peril Policy*.(³) En vista de ello, solicitó que se desestimara la acción en su contra ya que, de concluirse que los daños alegados estaban cubiertos por estas pólizas, "se estaría obligando a la parte aquí compareciente a responder contractualmente por una obligación que nunca asumió". Apéndice, pág. 15.

La U.C.B. se opuso a que se dictara la sentencia sumaria por entender que del contrato de seguro suscrito por las codemandadas surge que los hechos alegados en su contra están cubiertos por las pólizas; por lo tanto, existía una controversia material y genuina que no permitía que se dictara sentencia sumaria en esa etapa de los procedimientos.

Analizados los escritos de ambas codemandadas, el tribunal a quo emitió su Resolución de 19 de mayo de 1994,

---

(¹) Surge de la contestación a la demanda que "[l]a conducta de la Parte Demandante fue de gravedad e indisciplina al faltar el respeto a su profesora dentro del salón de clases, lo cual alteró la paz de la profesora y del grupo de estudiantes reunido. Dicha actuación se produjo minutos después de que la Parte Demandante procesara una baja de la Universidad y profiriera palabras hirientes y de mal gusto hacia la Institución demandada. Luego de expresar que habría de transferirse a otra institución, penetró al salón de clases de la Prof. Lydia Villamil, interrumpiendo su clase y alterando la paz de los allí reunidos". Apéndice, pág. 9.

(²) Núm. 024-10654.

(³) Núm. 013-26499.

en la que denegó la moción de sentencia sumaria al concluir que "las alegaciones de la demanda incluye [sic] riesgos cubiertos por las pólizas ... y que la American International está obligada a dar representación legal a la Universidad Central de Bayamón y cubierta sujeto a los resultados finales del caso". Apéndice, pág. 5.

Inconforme con el dictamen, American acudió ante nos y alegó la comisión de los errores siguientes:

> 1. Estima (American) que el Honorable Tribunal Superior de Puerto Rico, Sala de Bayamón incurrió en error de derecho al resolver que la póliza número 024-1064 [sic] denominada "Directors & Officers Insurance & Company Reimbursement Policy" (Póliza de Directores y Oficiales) cubre la reclamación objeto de este pleito.
> 2. Estima (American) que el Honorable Tribunal a quo incurrió en error de derecho al resolver que la póliza número 013-264999 [sic] denominada "AIICO Multiperil Policy" [sic] cubre la reclamación objeto de este pleito. Solicitud de *certiorari*, pág. 3.

Nos corresponde determinar si las pólizas expedidas por American a favor de la U.C.B. cubren las reclamaciones de la demandante sobre las angustias mentales ocasionadas por la alegada culpa y/o negligencia de la institución, como resultado de su suspensión.([4])

## II

En primer término discutiremos lo relacionado con la póliza denominada *Directors and Officers Insurance and Company Reimbursement Policy* para determinar si se cometió el primer error alegado.

Para interpretar correctamente la póliza en controversia, es necesario entender de qué se trata el llamado *Direc-*

([4]) A pesar de que se le dio oportunidad a la parte demandante recurrida para que mostrara causa por la cual no debíamos revocar la resolución recurrida por falta de cubierta de las dos (2) pólizas en controversia, dicha parte sólo argumentó sobre la póliza Núm. 024-10654; sobre la otra (Núm. 013-26499) nada expresó.

*tors & Officers Insurance Policy* (D & O), así como las razones por las cuales se ha desarrollado este tipo de seguro.

La proliferación de reclamaciones y litigios contra directores y oficiales corporativos, en especial durante la década de los ochenta, trajo consigo nueva legislación y regulación estatal y federal relacionada con la responsabilidad civil y criminal de dichos directores. El Congreso de Estados Unidos expandió el alcance de las leyes ambientales, laborales, de propiedad intelectual y otras, para imponer así mayores sanciones civiles y criminales. Véase W.E. Knepper y D.A. Bailey, *Liability of Corporate Officers and Directors*, 5ta ed., Charlottesville, The Michie Co., 1993, Vol. 2, pág. 34. En vista de ello, algunas corporaciones establecieron programas de prevención de pérdidas por la responsabilidad de directores y oficiales, los cuales ofrecían los beneficios siguientes:

> [R]educing the liability exposure of directors and officers, as well as the exposure of the corporation to provide indemnification;
> [I]mproving the corporation's ability to recruit qualified directors and officers;
> [A]voiding distracting, time-consuming and potentially embarrassing claims and expensive litigation;
> [E]nhancing defenses of claims and reducing the amounts of potencial adverse judgments; and
> [*i*]*mproving the ability of the corporation to obtain maximumbenefit D & O insurance at reasonable costs.* (Énfasis suplido y escolios omitidos.) Íd., pág. 35.

Como resultado de lo anterior, surgió la necesidad de proveer un seguro para los directores y oficiales de las corporaciones:

> ... When directors of major corporations, some of them troubled, were confronted with expanded liability exposure and a rash of proposals for takeovers, divestitures, shareholder suits, management buyouts, proxy fights, and the like, without adequate resources to defend seemingly interminable litigation and protect their personal estates from potential bankruptcy, the result was a serious threat of mass defections from corpo-

rate boardrooms. In this period, D & O insurance changed from a minor coverage with very little cost to a major issue and a major cost element in many corporate budgets. Knepper y Bailey, *op. cit.*, pág. 335.

De esta manera se desarrolló lo que se ha denominado el *D & O Insurance Policy.*

Este tipo de póliza tiene el propósito de proteger, de acuerdo con sus especificaciones, a los directores y oficiales de una corporación, y aunque se trata de una sola póliza, contiene dos (2) cubiertas distintas definidas de la manera siguiente:

[1.] the personal (or direct or D & O) part of the policy, indemnifies individual directors and officers for losses for which they are not indemnified by their corporation [and]

[2.] ... the corporate reimbursement part of the policy, reimburses the corporation for amounts which it is lawfully permitted or required to expend in indemnifying its officers and directors for their losses". Knepper y Bailey, *op. cit.*, pág. 337.

Bajo una póliza de directores y oficiales, la obligación del asegurador de pagar no surge sino *hasta después de que el asegurado sufra una pérdida monetaria real,* ya que de lo que se trata es de indemnizar por los gastos en que incurre el asegurado, por los cuales el asegurador es responsable de pagar. Esto es contrario al seguro de responsabilidad (*liability policy*), en el cual el asegurador acuerda cubrir la responsabilidad por daños, por lo que si el asegurado es responsable, la compañía de seguro debe pagar por éstos. Véase *Okada v. MGIC Indem. Corp.*, 823 F.2d 276 (9no Cir. 1986). Por tal razón, las llamadas pólizas D & O generalmente no contienen el deber de defender al asegurado como es característico encontrar en las pólizas de responsabilidad.(⁵)

Ahora bien, en cuanto a la cubierta se ha resuelto que ella, aunque protege a sus directores y oficiales, no

---

(⁵) Véase, además, *Pepsico, Inc. v. Continental Cas. Co.*, 640 F. Supp. 656 (S.D. N.Y. 1986).

incluye a la corporación; en ese sentido se ha señalado lo siguiente:

> There is no coverage for claims asserted against the corporation itself, on account of its direct wrongdoing or for its derivative or vicarious liability. The only protection afforded the corporation by the usual D & O policy is reimbursement for its expenditures in indemnifying its director or officers. While the ownership of the policy may be in the corporation, it is settled that its proceeds belong to the insured directors and officers. (Escolio omitido.) Knepper y Bailey, *op. cit.*, págs. 388–389.

Se ha indicado, además, que "[w]hen the underlying litigation includes claims based upon the actions of individuals or entities other than the insured directors and officers, the directors and officers liability insurance will not cover claims against the uninsured individuals or entities". B.R. Ostrager y T.R. Newman, *Handbook on Insurance Coverage Disputes*, 8va ed., Colorado, Ed. Aspen L. & Business, 1995, pág. 830.

■ La póliza de directores y oficiales contiene también unas cláusulas exclusorias que limitan las reclamaciones que se pueden hacer bajo su cubierta.

> There are generally four categories of exclusions in D & O policies. "Conduct" exclusion seek to eliminate coverage for conduct deemed to be sufficiently self-serving or egregious that insurance coverage for it would be inappropriate. Examples are personal profit or advantage, dishonesty, remuneration and Section 16(b) profits. "Other insurance" exclusions implement the concept that the D & O policy is the ultimate "backstop" for directors and officers. If a corporation can obtain another type of insurance to cover a D & O risk, the D & O insurer expects that to be done, so that the D & O policy will not be involved. Exclusions in this category include bodily injury/property damage, ERISA, libel and slander, notice under a prior policy and (at least historically) pollution. "Laser" exclusions identify risks unique to the particular insured which the insurer considers inconsistent with its underwriting principles. "Claimant" exclusions bar coverage for actions brought by particular classes of claimants. The insured v. insured and regulatory exclusions fall in this category. Knepper y Bailey, *op. cit.*, pág. 432.

■ Ciertamente, este tipo de póliza es muy específica en su contenido a favor de proteger a los directores y oficiales. Ésta no cubre muchos de los riesgos que puedan ser asegurados a través de la obtención de otros tipos de pólizas. Las razones para ello se han argumentado de la manera siguiente:

> The D & O policy does not cover all insurable liability risks of directors and officers for two basic reasons. First, at the time the D & O policy was being developed some policies already existed affording certain limited coverage to directors and officers and therefore neither the insurance industry nor the consumer corporations wanted to duplicate that other existing coverage in the D & O policy. A notable example is the corporate general liability policy, which insures both the corporation and its directors and officers against liability for bodily injury and property damage.
>
> Second, as particularly volatile or unique liability exposures developed over the last twenty years, separate insurance policies were developed to address those risks. Underwriters preferred this approach because it permitted the use of an insurance policy form tailored to the unique characteristics of the exposure and needs of the insured.. In addition, insurers are better able to develop and utilize specialized underwriting expertise through use of narrow, more focused policy lines. Knepper y Bailey, *op. cit.*, págs. 471–472.

## III

En el caso que tenemos ante nuestra consideración, la póliza de directores y oficiales contiene especificadas las dos (2) cubiertas que hemos definido previamente. En ese sentido dispone lo siguiente:

> COVERAGE A: DIRECTORS AND OFFICERS INSURANCE
> This policy shall pay the Loss of each and every Director or Officer of the Company arising from any claim or claims first made against the Directors or Officers and reported to the Insurer during the Policy Period or the Discovery Period (if applicable) for any alleged Wrongful Act in their respective capacities as Directors or Officers of the Company, except for and to the extent that the Company has indemnified the Directors or Officers. The Insurer shall, in accordance with and

subject to Clause 9, advance to each and every Director and Officer the Defense Costs of such claim or claims prior to their final disposition.

COVERAGE B: COMPANY REIMBURSEMENT INSUR-ANCE
This policy shall reimburse the company for Loss arising from any claim or claims which are first made against the Directors or Officers and reported to the insurer during the Policy Period or the Discovery Period (if applicable) for any alleged Wrongful Act in their respective capacities as Directors or Officers of the Company, but only when and to the extent that the Company has indemnified the Directors or Officers for such Loss pursuant to law, common or statutory, or contract, or the Charter or By-laws of the Company duly effective under such law which determines and defines such rights of indemnity. Apéndice, pág. 39.

Luego de establecer las cubiertas, la póliza define quiénes son los asegurados bajo ésta, para lo cual se establece que

Insured(s)", or "Director(s) or Officer(s)", means any past, present or future duly elected or appointed Directors or Officers of the Company. Coverage will automatically apply to all new Directors and Officers after the Inception date of this policy. Apéndice, pág. 39.

▮▮▮ Reiteradamente hemos resuelto que nuestro ordenamiento codifica de forma sustantiva tanto el contrato de seguros, Art. 11.010–11.370 del Código de Seguros de Puerto Rico, 26 L.P.R.A. secs. 1101–1137, como los principios básicos que rigen su interpretación, 26 L.P.R.A. sec. 1125, y los Arts. 1233–1241 del Código Civil, 31 L.P.R.A. secs. 3471–3479. *Meléndez Piñero v. Levitt & Sons of P.R.*, 129 D.P.R. 521 (1991). Sin embargo, no hay duda de que las pólizas de seguros que son provistas en Puerto Rico son, de ordinario, las "pólizas modelos" de los distintos tipos de seguro que suscriben en Estados Unidos las compañías aseguradoras. *Mélendez Piñero v. Levitt & Sons of P.R.*, supra. En ese sentido, este Foro no ha descartado que al resolver aquellos pleitos de seguros en que se requiere

interpretar las cláusulas de la póliza, se utilicen las normas del derecho angloamericano sin descartar las normas del derecho civil. *PFZ Props., Inc. v. Gen. Acc. Ins. Co.*, 136 D.P.R. 881 (1991).

Sobre este aspecto nuestra jurisprudencia ha señalado que

> [e]n relación con la interpretación de los contratos de seguros, hemos resuelto que el lenguaje usado en éstos debe ser interpretado —de ordinario— en su significado corriente y común, sin ceñirse demasiado al rigor gramatical, sino al uso general y popular de las voces. *Morales Garay v. Roldán Coss*, 110 D.P.R. 701 (1981); *Pagán Caraballo v. Silva, Ortiz*, 122 D.P.R. 105 (1988). También hemos señalado que las cláusulas de exclusión han de interpretarse restrictivamente, de forma tal que se cumpla el propósito de la póliza de proveer protección al asegurado. Toda ambigüedad debe resolverse en favor del asegurado. *Pagán Caraballo v. Silva, Ortiz*, supra; *The London Assurance v. Tribunal Superior*, 95 D.P.R. 305 (1967); *Barreras v. Santana*, 87 D.P.R. 227 (1963). Tal norma, no obstante, no tiene el efecto de obligar a que se interprete, a favor del asegurado una cláusula que —con claridad y sin ambigüedad— le da la razón al asegurador en la controversia en cuestión. *González v. Coop. Seguros de Vida de P.R.*, 117 D.P.R. 659 (1986). Si una cláusula de exclusión aplica claramente a determinada situación, la póliza, en general, no cubre los daños en cuestión, a pesar de las inferencias que parezcan surgir de las demás cláusulas. *Meléndez Piñero v. Levitt & Sons of P.R.*, 129 D.P.R. 521 (1991). Véanse: *Marín v. American Int'l Ins. Co. of P.R.*, 137 D.P.R. 356, 361–362 (1994); *Casanova v. P.R.-Amer. Ins. Co.*, 106 D.P.R. 689 (1978).

Las cláusulas de la póliza de directores y oficiales otorgada a favor de la U.C.B. indican, fuera de toda ambigüedad, quiénes están cubiertos por ella, expresando los nombres de las personas y la posición que éstas ocupan. Ciertamente, como parte de la lista de asegurados no se incluye a la corporación, es decir, la U.C.B. Ello es así porque, a pesar de que la universidad tiene que tomar las decisiones a través de sus oficiales, el propósito de esta póliza en particular no es proteger a la universidad de re-

clamaciones en su contra, sino a los directores y oficiales que incurran en un *wrongful act*, por el cual la universidad no respondería.

En resumen, pues, bajo las normas de interpretación aplicables al seguro de directores y oficiales, así como el propósito de este tipo de póliza, no procede la reclamación contra American en vista de que ninguno de los asegurados enumerados en la póliza de directores y oficiales, que fue expedida por ésta a favor de la U.C.B., es parte demandada en el pleito de autos.

## IV

En cuanto al segundo error alegado, concluimos que éste también se cometió. Veamos.

La póliza a la que se hace referencia en este error es de seguro a todo riesgo (*Comprehensive General Liability*) y se titula *AIICO Multi-Peril Policy*. Ésta, contrario a la anterior, sí incluye como asegurada a la U.C.B. Sin embargo, debemos analizar cuáles son las reclamaciones que se permiten bajo las cubiertas provistas por ésta.

La póliza de seguros a todo riesgo, conocida como *Comprehensive General Liability*, cubre riesgos en general; pero dentro de dicha generalidad ésta contiene especificaciones:

The comprehensive general Liability ("CGL") policy provides coverage for "bodily injury" and "property damage". Thus, the policy jacket of a CGL policy typically states:

The Company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of:

A. bodily injury, or

B. property damage

*to which this insurance applies* caused by an occurrence... Emphasis added.

The phrase "to which this occurrence applies" limits coverage to losses that arise out of specific perils.[6] Apéndice, pág. 98.

La póliza de seguros a todo riesgo (*Comprehensive General Liability*) ha sido, en ocasiones anteriores, fuente de análisis ante nuestra consideración. Así, en *Albany Ins. Co. v. Cía. Des. Comercial P.R.*, 125 D.P.R. 421, 425–426 (1990), señalamos:

> Una póliza de seguros a todo riesgo (*Comprehensive General Liability Insurance*) es aquella donde se han "incluido todas las garantías normalmente aplicables a determinado riesgo". J. Castelo, *Diccionario Básico de Seguros*, Madrid, Ed. Mapfre, 1972, pág. 160. Es decir, no se enumeran detalladamente todos aquellos riesgos cubiertos y se provee seguro para aquellos riesgos enumerados y para todo otro que no haya sido descubierto, reconocido o especificado. Sin embargo, esto no significa que sea una póliza que cubra todo riesgo sin condiciones, limitaciones o exclusiones. J. Long y D. Gregg, *Property and Liability Insurance Handbook*, 1965, pág. 493.
>
> Normalmente este tipo de póliza contiene una sola cláusula de cubierta para daños a la propiedad y otra para daños corporales. El lenguaje que contienen estas cláusulas es sumamente importante, pues define el alcance de la cubierta. Si la cláusula sobre daños a personas establece que se compensarán los daños físicos o corporales y no los personales, la cubierta se limitará estrictamente a estos y no podrán indemnizarse otro tipo de perjuicio como líbelo, angustias mentales, etc.

En la Sec. II de la póliza —aquí en controversia— se dispone todo lo relacionado con la cubierta (*General Liability Insurance Coverage*) y se indica, en su parte pertinente, lo siguiente:

> The Company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury or property damage to which this insurance applies, *caused by an occurrence.* (Énfasis suplido.) Apéndice, pág. 86.

---

[6] B.R. Ostrager y T.R. Newman, *Handbook on Insurance Coverage Disputes*, 8va ed., Colorado, Ed. Aspen Law & Business, 1995, pág. 229.

En *Saavedra v. Joyerías Gordons, Inc.*, 120 D.P.R. 360, 363 (1988), este Tribunal hizo la traducción siguiente de dicha parte de la cláusula de cubierta:

> La compañía [aseguradora] pagará en beneficio de o por el asegurado toda suma de dinero que el asegurado esté legalmente obligado a pagar por daños físicos o daños a la propiedad *causados por una ocurrencia.* (Énfasis en el original.)[7]

El término *occurrence* se define en la póliza como "an *accident,* including continuous or repeated exposure to conditions, which results in bodily injury or property damage *neither expected nor intended* from the standpoint of the insured". (Énfasis suplido.) Apéndice, pág. 97.

El término "siniestro" (*occurrence*) significa, por su parte, "*un accidente,* incluyendo exposición continua y repetida a una condición que resulta en daños físicos o daños a la propiedad *no anticipados ni intencionales* desde el punto de vista del asegurado". (Traducción y énfasis nuestros y citas omitidas.) *Saavedra v. Joyerías Gordons, Inc.,* supra, pág. 363. Véanse: *Morales Garay v. Roldán Coss,* 110 D.P.R. 701, 708 (1981); *Albany Ins. Co. v. Cía. Des. Comercial P.R.,* supra, pág. 421.

Es una norma reiterada en nuestra jurisdicción que aunque el deber del asegurador es "defender" al asegurado de acciones *bajo la cubierta del contrato* y esta obligación es, por los propios términos de la póliza en controversia, coextensiva con la de indemnizar, su deber se mide —en primer término— por las alegaciones del demandante. *Las alegaciones tienen que describir hechos que co-*

---

(7) En *Albany Ins. Co. v. Cía. Des. Comercial P.R.,* 125 D.P.R. 421, 425 (1990), utilizamos el concepto "siniestro", el cual es el vocablo correcto para *occurrence.* La palabra "ocurrencia" se deriva del verbo ocurrir y significa encuentro o suceso causal. Por su parte, la palabra "siniestro" es un término más abarcador que accidente, ya que es la manifestación concreta del riesgo asegurado que produce unos daños garantizados en la póliza hasta determinada cuantía. Por lo tanto, utilizaremos en adelante la palabra "siniestro" en lugar de "ocurrencia".

*loquen el daño dentro de la cubierta de la póliza. Vega v. Pepsi-Cola Bot. Co.,* 118 D.P.R. 661, 665 (1987).[8]

En vista de lo anterior, se equivocó el tribunal de instancia al concluir que bajo la póliza de seguros a todo riesgo (*Comprehensive General Liability*) —que aquí consideramos— procede dar cubierta a los daños alegados por la demandante, ya que la *expulsión de ésta por la universidad* no constituye un siniestro cubierto por la póliza, por no ser dicha expulsión un accidente, según este término se define en la misma. La expulsión de marras constituye un acto intencional cuyo resultado y consecuencias fueron claramente anticipadas.

Por último, el tribunal de instancia determinó que "las alegaciones de la demanda están incluidas en los riesgos cubiertos por la póliza número 013–264999[sic] bajo las cláusulas llamadas: 'Comprehensive General Liability Insurance, Owners Landlords, Tenants Liability Insurance' y/o 'Completed Operations and Products Liability Insurance' ". Apéndice, pág. 5. Fundamenta su contención en que "[e]l producto de la Universidad lo constituyen sus programas educativos" (íd.) y añade que "[e]s obvio que las alegaciones de la demanda están incluidas dentro de esta definición .... Las definiciones de estas pólizas comprenden tanto a los maestros como al personal (*staff*) de la Universidad". Íd.

Bajo el endoso denominado con el *Owners, Landlords and Tenants Liability Insurance* se incluyó como asegurados adicionales de la póliza a los maestros y el personal (*staff*) "with respect to the operation of any college or school by or on behalf of the named insured". Apéndice, pág. 10. Sin embargo, es incorrecta la interpretación que de dicho endoso hizo el juez sentenciador. La cubierta que aquí se le da a los maestros y al personal se refiere a los daños causados por algún siniestro, cuya definición ya he-

---

[8] Véase, también, *Fernández v. Royal Indemnity Co.,* 87 D.P.R. 859, 863 (1963).

mos discutido, *como resultado de la posesión u ocupación por la universidad de cualquier local o edificio en calidad de dueña o arrendataria.* Este endoso nada tiene que ver con la reclamación que se hace en este pleito.

Finalmente, en cuanto al endoso sobre el *Completed Operations and Product Liability Insurance* tampoco hay cubierta a tenor de las alegaciones de la demandante. Según la definición de *siniestro* ya comentada, el riesgo cubierto se refiere al causado por un artículo producido por la asegurada. Aun si consideramos los programas educativos de la universidad como un "producto", tales programas no causaron daño alguno a la reclamante.

## V

En resumen, los daños reclamados mediante la demanda presentada por la Sra. Gladys Guerrido no están cubiertos por la póliza denominada *Directors and Officers Insurance and Company Reimbursement*, ya que para que proceda una reclamación bajo dicha póliza, es necesario incluir como demandados a los oficiales o directores asegurados que alegadamente causaron el daño y alegar hechos suficientes que nos permitan determinar que tal daño es el resultado o la consecuencia de un siniestro (*occurrence*), según dicho término se define en la póliza.

En cuanto al *Comprehensive General Liability*, tampoco procede la reclamación, ya que las cubiertas bajo dicha póliza no incluyen los daños reclamados por la demandante.

 La Regla 36.3 de Procedimiento Civil, 32 L.P.R.A. Ap. III, dispone, en lo pertinente, que la sentencia sumaria "se dictará ... si las alegaciones, [deposiciones], contestaciones a interrogatorios y admisiones ofrecidas, en unión a las declaraciones juradas, si las hubiere, demostraren que no hay controversia real sustancial en cuanto a ningún hecho material y que como cuestión de derecho debe dictarse sentencia sumaria a favor de la parte promo-

354

vente. ... Dicha sentencia podrá dictarse a favor o en contra de cualquier parte en el pleito". Véase *PFZ Props. v. Gen. Acc. Ins. Co.*, supra, pág. 911.

 En *Medina v. M.S. & D. Química P.R., Inc.*, 135 D.P.R. 716, 726–727 (1994), resolvimos que procede dictar sentencia sumaria "cuando ha quedado claramente establecido que para resolver la controversia no hace falta una vista evidenciaria".

En el caso que aquí consideramos, nos correspondía determinar si las reclamaciones que forman parte de la demanda están cubiertas por las mencionadas pólizas. Ciertamente, del análisis de ellas podemos concluir que no hay hechos materiales esenciales en controversia y que, por lo tanto, como cuestión de derecho procede dictar sentencia sumaria a favor de la parte recurrente.

Por los fundamentos anteriormente expuestos, *se dictará sentencia para revocar la resolución del tribunal de instancia y, en su lugar, se dictará sentencia sumaria a favor de la parte recurrente para desestimar la reclamación en su contra. Se devolverá el caso al foro de instancia para que continúen los procedimientos de forma compatible con esta opinión.*