# 2004 DTA 71

RECEIVED

AUG 1 0 2004

SERIALS DEPARTMENT
HARVARD LAW SCHOOL LIBRARY

## TRIBUNAL DE CIRCUITO DE APELACIONES
## REGION JUDICIAL DE FAJARDO
## PANEL IX

JUANITA OJEDA, Y OTROS
Apelados-Demandantes

v.

ESTADO LIBRE ASOCIADO DE PUERTO RICO
Demandado

Núm. KLAN-03-01545

San Juan, Puerto Rico, a 5 de marzo de 2004

Panel integrado por su Presidenta, la Juez Pesante Martínez,
y los Jueces Aponte Jiménez y Salas Soler

Pesante Martínez, Juez Ponente

KGV
74
A21995
v. 10

■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■

■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■

## TEXTO COMPLETO DE LA SENTENCIA

El Estado Libre Asociado de Puerto Rico (en adelante "*ELA*") procura la revocación de una sentencia emitida por el Tribunal de Primera Instancia, Sala Superior de Fajardo. Mediante la misma se determinó la negligencia solidaria entre el ELA y CHC Fajardo, Inc. por el fallecimiento de la señora Juanita Ojeda ante la omisión del Departamento de Salud en intervenir y tomar las medidas necesarias para corregir las deficiencias de la Sala de Emergencias del Centro Médico de Fajardo.

Examinado el expediente en su totalidad, revocamos la sentencia apelada y devolvemos el caso al Tribunal de Primera Instancia para que proceda de conformidad con lo que aquí se dispone.

### I

El 30 de noviembre de 1994, el Departamento de Salud de Puerto Rico (en adelante "*Departamento*"), la Administración de Facilidades y Servicios de Salud (en adelante "*AFASS*"), y CHC Fajardo, Inc. (en adelante "*CHC*"), otorgaron un contrato mediante el cual AFASS le traspasaba a CHC la operación, dirección y administración de varias facilidades de salud en el área de Fajardo. Según los términos del contrato, CHC se haría responsable de la operación y control de las facilidades médicas.

Durante la vigencia del referido contrato, específicamente el 6 de octubre de 1996, la señora Juanita Ojeda, quien padecía de diabetes, fue llevada de emergencia al Centro de Medicina Primaria en Vieques. La paciente que se quejaba de vómitos y mareos, luego de evaluada, fue transferida mediante vuelo de emergencia al Centro Médico de Fajardo. Una vez allí, según las alegaciones contenidas en la demanda, fue acomodada en el área de observación en espera de una evaluación médica. Aproximadamente una hora más tarde, le da un fuerte dolor y muere sin haber sido evaluada. ■

Por estos hechos, el 7 de octubre de 1997, el padre y los hermanos de la difunta Juanita Ojeda [2] presentaron una demanda en daños en contra del ELA, del Departamento de Salud de Puerto Rico, de la Administración de Seguros de Salud (en adelante "*ASES*"), del Centro de Medicina Primaria de Vieques, del CHC Fajardo, Inc. y del médico que recibió a la paciente a su llegada al Centro Médico de Fajardo, Dr. Negrón.

En la demanda se alegó, entre otras cosas, que tanto el Departamento de Salud como ASES tenían la obligación de: (1) asegurarse de la solvencia económica de CHC; y (2) establecer un sistema de vigilancia que le permitiera evaluar la calidad de los servicios prestados por ésta, al amparo de lo dispuesto en la Ley de Privatización de Instituciones de Salud.

Los demandantes emplazaron únicamente al ELA, quien mediante comparecencia especial alegó que había sido emplazada fuera de término y que la demanda estaba prescrita. ■ El tribunal de instancia acogió los planteamientos del ELA y desestimó la demanda por no haberse diligenciado los emplazamientos dentro del término establecido; no obstante, el 8 de mayo de 1998, dejó sin efecto esta sentencia.

Transcurridos varios trámites adicionales, ■ los demandantes presentaron otra demanda (NDP2000-0065) en daños en la que alegaron los mismos hechos. En la misma se incluyó entre los demandados a CHC por

conducto de su síndico, a ASES, a CHC Profesional Services y a Litigio Autoseguro Fajardo. El tribunal de instancia consolidó ambos casos a solicitud de los demandantes.

Así las cosas, y después de haberse paralizado los procedimientos en cuanto al demandado CHC por haberse acogido a la Ley de Quiebra, el ELA presentó moción de desestimación bajo el fundamento de que la demanda estaba prescrita. En dicha moción expuso además que la parte demandante incumplió con el requisito de notificar al Estado al amparo de lo dispuesto en la Ley de Pleitos contra el Estado, Ley Núm. 121 de 24 de junio de 1955. La moción fue declarada no ha lugar.

Posteriormente, las partes presentaron el informe sobre conferencia preliminar entre abogados en el que las partes estipularon los siguientes hechos: (1) que la fenecida acudió al Centro de Medicina Primaria de Vieques el 6 de octubre de 1996; (2) que posteriormente fue trasladada al Centro Médico de Fajardo; (3) que falleció en tales facilidades el 6 de octubre de 1999; (4) que para esa fecha, dichas facilidades estaban siendo administradas por CHC Fajardo, Inc.; y (5) que la causa inmediata de la muerte de Juanita Caraballo Ojeda fue el abandono por parte del equipo médico empleado por CHC, quien incumplió con su deber de brindarle atención.

Sobre estos hechos, el ELA solicitó mediante moción se dictara sentencia sumaria. Expuso que no existía controversia sobre hecho sustancial alguno, y que la única responsable por los hechos alegados era CHC, quien brindó una asistencia médica negligente lo que provocó la muerte de la señora Caraballo Ojeda. El 29 de agosto de 2003, la parte demandante se opuso y, a su vez, solicitó se dictara sentencia sumaria a su favor.

El 16 de octubre de 2003, el tribunal de instancia denegó la moción de sentencia sumaria presentada por el ELA porque alegadamente no presentó prueba suficiente y convincente de la inexistencia de una controversia real y sustancial sobre los hechos. Sin embargo, dictó sentencia el 13 de noviembre del mismo año, en la que acogió los planteamientos de la parte demandante.

Inconforme, el apelante presentó el recurso de epígrafe en el que expone que incidió el Tribunal de Primera Instancia al no acoger su planteamiento sobre la prescripción de la acción presentada, y al determinar que el ELA era responsable por los hechos ocurridos, máxime cuando no se probó incumplimiento de su parte con algún deber ministerial.

Con el beneficio de la comparecencia de las partes, y del derecho aplicable, resolvemos.

## II

La Regla 36 de Procedimiento Civil, 32 L.P.R.A. Ap. III, autoriza a un tribunal a dictar sentencia sumaria en un caso, cuando de los documentos y declaraciones sometidas en apoyo de la moción quedare demostrado que no existe controversia real sustancial en cuanto a ningún hecho material y que sólo resta aplicar el derecho. La sentencia podrá dictarse a favor o en contra de cualquier parte en el pleito. *Guerrido García v. Universidad Central de Bayamón*, 143 D.P.R. 337 (1997); *P.F.Z. Properties Inc. v. General Accident Insurance Co.,* 136 D. P.R. 881 (1994); *Consejo de Titulares C. Parkside v. MGIC Fin. Corp.*, 128 D.P.R. 538 (1991).

El propósito principal de la moción de sentencia sumaria es propiciar la solución justa, rápida y económica de litigios en que no se presentan controversias genuinas de hechos materiales, por lo que no se justifica la celebración de un juicio en su fondo. Utilizado correctamente, este vehículo procesal contribuye a descongestionar los calendarios judiciales. *Hurtado Latre v. Osuna y Freese*, 138 D.P.R. 801 (1995); *Pilot Life Insurance Company v. Crespo Martínez*, 136 D.P.R. 624 (1994).

No obstante, el objetivo de aligerar la tramitación de un caso no puede derrotar el principio fundamental de todo proceso ante un tribunal; alcanzar una solución justa. Por tanto, si existen dudas sobre la existencia de una controversia de hechos, ésta debe resolverse en contra de la parte que solicita la sentencia sumaria. *Bonilla*

*Medina v. P.N.P.*, 140 D.P.R. 294 (1996); *P.F.Z Properties, Inc. v. General Accident Insurance Company, P.R. Ltd., supra*.

La sentencia sumaria procede en casos claros cuando el Tribunal tiene ante sí la verdad sobre todos los hechos pertinentes y no hace falta una vista evidenciaria. *Guerrido García v. Universidad Central de Bayamón, supra*; *J.A.D.M., v. Centro Com. Plaza Carolina*, 112 D.P.R. 785 (1993). De ordinario, si existen dudas sobre la procedencia de la moción, éstas deben ser resueltas en contra de la misma. *Audiovisual Language v. Sistema de Estacionamiento Natal Hermanos*, ___ D.P.R. ___ (1997); *Bonilla Medina v. P.N.P., supra*; *Rivera et.al. v. Superior Packing, Inc.*, 132 D.P.R. 115 (1992).

Por otro lado, al dictar sentencia sumaria, el tribunal deberá: (1) analizar los documentos que acompañan la moción solicitando la sentencia sumaria y los documentos incluidos con la moción en oposición y aquéllos que obren en el expediente del tribunal, *Medina v. Merck Sharp & Dhome*, 135 D.P.R. 716 (1994); (2) determinar si el oponente controvirtió algún hecho material o si hay alegaciones en la demanda que no han sido refutadas en forma alguna por los documentos. Sin embargo, el tribunal no deberá dictar sentencia sumaria cuando: (1) existen hechos materiales no controvertidos; (2) hay alegaciones afirmativas en la demanda que no han sido refutados; (3) surge en los propios documentos que se acompañan con la moción una controversia real sobre algún hecho material; o (4) como cuestión de derecho, no procede. *Corp. Presiding Bishop, CJC of LDS v. Purcell, supra*.

El sabio discernimiento es el principio rector para el uso de la sentencia sumaria, pues mal utilizada puede prestarse para despojar a un litigante de su *"día en corte"*, principio elemental del debido procedimiento de ley. *García Rivera v. Enríquez Marín*, ___ D.P.R. ___ (2001), **2001 J.T.S. 15**, opinión de febrero de 2001; *Management Administration Services v. E.L.A.*, ___ D.P.R. ___ (2000), **2000 J.T.S. 189**, opinión de 29 de noviembre de 2000; *Roig Com. Bank v. Rosario Cirino*, 126 D.P.R. 613 (1990).

De conformidad con los postulados sobre la sentencia sumaria antes expuestos, no procede que se dicte la misma en aquellos casos en donde existen controversias de hechos medulares o esenciales. En el presente caso, al revisar los escritos de las partes observamos que hay hechos medulares en controversia.

Como parte de sus alegaciones, la parte apelante expone que la causa de acción que originó el presente pleito estaba prescrita al momento de presentarse la demanda el 7 de octubre de 1997. Sostiene que la muerte de la Sra. Juanita Ojeda ocurrió el 6 de octubre de 1996, quien murió sin haber recibido tratamiento médico alguno en el Centro Médico de Fajardo, y que a falta de que la parte demandante demuestre que advino en conocimiento del daño en otra fecha, la demanda debió ser presentada en tiempo en o antes del 6 de octubre de 1997. Por otra parte, los demandantes sostienen, en primer lugar, que a la fecha de la muerte de la señora Ojeda no tenían conocimiento de quién era el causante del daño; y, segundo, que en o alrededor del 29 de abril de 1998 advinieron en conocimiento de fundamentos para proseguir su causa de acción por impericia medica.

Somos de la opinión que estas alegaciones debieron ser examinadas y dirimidas por el foro de instancia en una vista plenaria en la que las partes tuvieran la oportunidad de presentar prueba en apoyo a sus contenciones. De otro lado, el foro apelado en la sentencia parcial adjudicó responsabilidad solidaria entre el ELA y CHC Fajardo, Inc., ▆ sin contar con un testimonio pericial sobre las causas de la muerte de la Sra. Juanita Ojeda; sin que se presentara prueba sobre la relación del ELA con la muerte de ésta; sin que se establecieran las condiciones del Centro Médico de Fajardo al momento de la muerte.

Las disputas sobre negligencia, como las presentes en este caso, no deben de ordinario adjudicarse mediante sentencia sumaria, sino que deben resolverse en un juicio plenario. Las dudas deben resolverse en contra de la sentencia sumaria. *González Vda. de Viera v. Tribunal Superior*, 93 D.P.R. 491 (1966). No es aconsejable utilizar el mecanismo procesal de la sentencia sumaria cuando están presentes elementos subjetivos, de

intención, propósitos mentales o negligencia, o cuando el factor credibilidad sea esencial. *Soto v. Hotel Caribe Hilton*, 137 D.P.R. 294 (1994).

Para que efectivamente pueda determinar el tribunal de instancia si la presente acción está o no prescrita, o si el Departamento de Salud incumplió o no con su deber de supervisar y fiscalizar los servicios prestados por CHC como operador del Centro Médico de Fajardo, o si fue responsable en cuanto a la muerte de la Sra. Juanita Ojeda, por acción, al brindar un tratamiento médico inadecuado u omisión al no atenderla en modo alguno cuando llegó a sus facilidades, es necesaria la celebración de un juicio plenario.

### III

Por entender que el mecanismo de sentencia sumaria no es el adecuado para la solución de este caso, revocamos la sentencia emitida, y devolvemos el caso al Tribunal de Primera Instancia para que celebre un juicio plenario en el que las partes presenten y refuten la prueba presentada en apoyo a sus alegaciones.

Lo acordó el Tribunal y lo certifica la Secretaria General.

Aida Ileana Oquendo Graulau
Secretaria General

### ESCOLIOS 2004 DTA 71

1. Véase Demanda en el caso NDP1997-0071, página 77 apéndice del Escrito de Apelación, incisos 4 y 5.

2. Los demandantes de la causa de epígrafe son: Algeo Caraballo, padre de la difunta, y sus hermanos Julio, Migdalia, Santiago, Eusebio, Algeo, todos de apellido Caraballo Ojeda, y Nilsa Caraballo Torres.

3. En el presente caso, los emplazamientos fueron expedidos por el Tribunal de Instancia el 9 de octubre de 1998, y fueron diligenciados 24 días después de expirado el término de seis meses establecido por las Reglas de Procedimiento Civil, 32 L.P.R.A. Ap. III, R. 4.3.

4. El 5 de mayo de 1999, a solicitud de la parte demandante, el Honorable Tribunal de Primera Instancia desestimó la demanda sin perjuicio en cuanto a los demandados Centro de Medicina Primaria de Vieques, CHC Fajardo, Inc., ASES y el Dr. Negrón. El ELA quedó como único demandado en el caso NDP1997-0071.

5. CHC Fajardo, Inc. no ha presentado ni controvertido prueba, ya que los procedimientos en cuanto a ésta están paralizados por encontrarse bajo la Ley de Quiebras.