TEXTO COMPLETO DE LA SENTENCIA
I
Alan Ortiz Santiago, ingeniero de profesión (en adelante “Ortiz Santiago”), apela de las Determinaciones de Hechos, Conclusiones de Derecho y Sentencia (la “Sentencia”) dictada el 16 de septiembre de 2003, por el Tribunal de Primera Instancia, Sala Superior de Carolina, en el caso Alan Ortiz Santiago v. Tiri Better Homes & Gardens y otros, Civil Núm. FAC-97-0023, Sobre: Daños y Perjuicios, copia de cuya notificación se archivó en autos el 1 de octubre de ese año. Mediante el referido dictamen, el foro de primera instancia desestimó en su totalidad la demanda instada por Ortiz Santiago.
Oportunamente, el 8 de octubre de 2003, solicitó determinaciones de hechos y de derecho y enmienda al dictamen. Por su parte, Tiri Better Homes & Gardens se opuso a lo solicitado. Posteriormente, el 25 de marzo de 2004, notificada el 28 de abril de ese año, su solicitud fue declarada Sin Lugar.
Resolvemos con el beneficio de los escritos, la Transcripción de la Prueba y el derecho aplicable.
II
El 23 de enero de 1997, Ortiz Santiago presentó demanda sobre daños y perjuicios e incumplimiento de contrato contra varios demandados bajo distintas premisas de responsabilidad. A saber, demandó a Tiri Better Homes & Gardens (“Tiri”); Junta de Directores del Condominio Mundo Feliz (“Junta”); Asociación de Condómines del Condominio Mundo Feliz (“Asociación”); Compañía Aseguradora Triple S (“Triple S”); Banco Santander; Nilda Mundo; Ángel L. López Corujo, Julie E. Rivera Torres y la sociedad de gananciales compuesta entre ellos (“Sociedad de Gananciales López Rivera”). En esencia, alegó que luego de haber adquirido el apartamento número 808 en el Condominio Mundo Feliz en la Avenida Baldorioty en el Municipio de Carolina, se percató de la existencia de unas filtraciones en el área del baño provenientes del baño del apartamento número 908 ubicado en el piso superior al suyo, arrendado o propiedad de la señora Nilda Mundo (“señora Mundo”), filtraciones que le causaron daños a su apartamento el que no había podido utilizar. Solicitó se anularan las escrituras de compraventa e hipoteca y se le compensara en daños y perjuicios.
En cuanto a Tiri, alegó el tener un contrato de corretaje para la compra del apartamento 808 y, a su vez, un contrato de venta con los dueños del apartamento, Sociedad de Gananciales López Rivera; que sus agentes o empleados o la Sociedad de Gananciales López Rivera no le informaron de la existencia de las filtraciones; *298 tampoco Tiri le informó de su derecho a escoger el notario para el otorgamiento de la escritura de compraventa; y que el día del otorgamiento de las escrituras Tiri, sus agentes o empleados no le informaron de la ausencia de los vendedores o sus apoderados.
Con respecto a la codemandada señora Mundo, poseedora como dueña o arrendataria del apartamento superior, alegó haber hecho gestiones infructuosas con ésta para que reparara su cuarto de baño y así evitar los continuos daños a su apartamento. Adujo que le llevó a la señora Mundo un albañil y un plomero para que arreglara su baño y quedó en contratarlo, pero no lo hizo. Como resultado de ello, las aguas seguían penetrando por la pared de su baño y al apartamento haciéndolos inservibles.
En cuanto a la Junta, alegó que incurrieron en actuaciones y omisiones negligentes al no hacer caso a sus requerimientos y no tomar acción contra la señora Mundo, dueña o arrendataria del apartamento número 908, lugar de donde provenían las filtraciones, quien había incurrido en actos violatorios al Reglamento del Condominio.
El 28 de febrero de 1997, la señora Mundo contestó la demanda. Negó por falta de información y/o creencias varias de sus alegaciones. Así también, negó por ser falsas aquéllas en cuanto a que Ortiz Santiago hubiese hecho gestiones infructuosas con ella para la reparación de baño y que le hubiese llevado un albañil y un plomero para realizar las mejoras.
Allá en o para el 20 de mayo de 1997, Ortiz Santiago enmendó su demanda para alegar daños continuos. Posteriormente, el 6 de marzo de 1998, la enmendó por segunda ocasión para incluir como codemandada a Nationwide Insurance Company ("Nationwide"), por razón a que para la fecha en que se efectuó la compraventa del inmueble, el Condominio Mundo Feliz tenía una póliza de seguro emitida por Nationwide, a favor de su Junta, póliza que alegadamente respondía por los daños y riesgos reclamados en la demanda.
Más adelante, con fecha del 5 de mayo de 1998, Nationwide presentó su contestación a la acción judicial instada en su contra. Negó su responsabilidad, así como las alegaciones esenciales de la demanda y levantó varias defensas afirmativas. Como parte de sus defensas, adujó que la póliza expedida a favor de la Junta no cubría los daños y riesgos reclamados en la demanda y, por el contrario, éstos estaban expresamente excluidos de su cubierta.
Así las cosas, el día 5 de mayo de 2000, Nationwide presentó una Moción de Sentencia Sumaria Parcial, solicitando se desestimara la reclamación en su contra. Expuso como hechos incontrovertidos: primero, que desde enero de 1996, dos meses después de haber adquirido el inmueble, Ortiz Santiago conocía que la filtración provenía del apartamento número 908, superior al suyo, que la misma era específicamente causada por un orificio en la superficie de la bañera de dicho apartamento el cual estaba en posesión de la señora Mundo, y que una vez dicha bañera fue sustituida, cesaron las filtraciones; segundo, que en todo caso la señora Mundo era la responsable de los daños sufridos por Ortiz Santiago al no reparar oportunamente su bañera y no la Junta; y tercero, que aun si la Junta fuera responsable ante Ortiz Santiago por inacción ante los reclamos de dicho condomino, la póliza de seguro expedida por Nationwide a favor de dicha Junta no cubría los daños reclamados en la demanda por no tratarse de un accidente.
El 30 de mayo de 2000, el TPI declaró No Ha Lugar la solicitud de sentencia sumaria de Nationwide y otra de la señora Mundo. Inconforme, Nationwide recurrió al anterior Tribunal de Circuito de Apelaciones (“TCA”), en Solicitud de Certiorari (KLCE-2000-00750). El 29 de noviembre de 2000, el TCA expidió el auto y revocó el dictamen del TPI. Expresó que los daños reclamados por Ortiz Santiago no estaban cubiertos por la póliza de seguro expedida por Nationwide a favor de la Junta; que la situación que produjo los alegados daños no constituia un accidente al amparo de los términos de la póliza; y que el deber de la aseguradora con respecto a su asegurado se mide en primer término por las alegaciones del demandante, las que tienen que describir hechos que coloquen *299 el daño reclamado dentro de la cubierta de la póliza, lo que no ocurrió en el caso. En consecuencia, declaró Con Lugar la solicitud de sentencia sumaria de Nationwide desestimando la demanda de Ortiz Santiago en su contra.
Al igual que lo hiciera Nationwide, Triple S, en su contestación a la Demanda de 27 de mayo de 1997, como en su contestación a la Demanda Enmendada de 10 de octubre de ese año y, en su contestación a la Segunda Demanda Enmendada de 27 de mayo de 1998, levantó como defensa afirmativa que el suceso y los daños alegados por Ortiz Santiago fueron ocasionados por las actuaciones negligentes de un tercero y la póliza expedida, expresamente, excluia de su cobertura los daños reclamados. En consideración a ello, el 28 de mayo de 2001, Triple S presentó escrito titulado Moción Solicitando Sentencia Sumaria al Amparo de Sentencia dictada por el Tribunal de Circuito de Apelaciones.
Luego de varios trámites procesales y señalamientos, comenzó el juicio en su fondo. Triple S sometió su solicitud de sentencia sumaria parcial; la alegación de Tiri en cuanto a la ausencia de parte indispensable se dejó para disposición una vez concluida la presentación de toda la prueba. Se presentó prueba documental y testifical, luego de lo cual, el TPI hizo las siguientes
Determinaciones de Hechos:
1. El 10 de octubre de 1995, la parte demandante, el Ingeniero Alan Ortiz Santiago y una representante legal de PHH Real Estate Services Corp. L. A. Lovallo, firmaron un contrato de opción de compra sobre el apartamento 808, Condominio Mundo Feliz, Carolina, Puerto Rico.
2. El demandante le entregó a la señora Jeannette Pérez Matta, en su calidad de corredora de Bienes Raíces asociada a Tiri un cheque por al suma de $6,293.00 como depósito para la opción.
3. La propiedad antes descrita estaba siendo mercadeada conforme a un contrato de corretaje por la codemandada Tiri, a través de la corredora de bienes raíces Jeannette Pérez Matta, asociada a la codemandada Tiri.
4. Una de las cláusulas de dicho contrato de opción de compraventa dispone lo siguiente:

“Deed of sale is to be prepared by the Attorney of Seller’s choice and executed on or before December 22, 1995.”

“It is understood that TIRI/BHG is acting as agent in this sale and is in no way responsible in the case of none compliance by either the Buyer or the Seller and incurs no responsibility for any defects in construction, manufacturing of appliances or fixtures, or errors in the title of the property. Neither is TIRI/BHG responsible for Sellers or Buyers failure to disclose information of which TIRI/BHG had no knowledge, or of both parties do not reach an agreement. ”

1. Antes del demandante adquirir el apartamento en controversia, el mismo evidenciaba una filtración en el techo del baño. La corredora Jeannette Pérez Matta le informó al demandante que la filtración había sido reparada y que lo único que faltaba era arreglar el techo.
2. El día del cierre, a petición del ingeniero demandante, la señora Pérez Matta le entregó al demandante un cheque por la suma de $100 para realizar las reparaciones que eran necesarias.
3. El demandante aceptó los cien ($100) dólares y otorgó un relevo de responsabilidad a favor de Tiri y PHH *300 Real Estate Services, el cual lee como sigue:

“Release of Liability

The undersigned buyer(s) of the property located at Apt. 808 Cond. Mundo Feliz, Carolina, Puerto Rico, will receive $100 and hereby release TIRI/Better Homes and Gardens and PHH/Relocation from all and any responsibility and or claims for any and all defects or vices in the property. ”

1. Desde el mes de enero de 1996, a los dos meses de haber adquirido el apartamento 808 del condominio Mundo Feliz, Ortiz Santiago advino en conocimiento de que la filtración que mostraba el inmueble provenía del apartamento 908 del condominio y que la misma era causada por un agujero de la bañera de dicho apartamento.
2. La poseedora del apartamento 908 del condominio antes mencionado, señora Nilda Mundo, había admitido al demandante que el problema era de su propiedad y que procedería a resolverlo.
3. Ortiz Santiago admitió haber observado que la bañera del apartamento 908 había sido sustituida por una ducha de piso. Admitió, además, que luego de haberse realizado dicha modificación cesaron las filtraciones que afectaban a su apartamento.
4. Ortiz Santiago admitió que los daños alegadamente sufridos por él fueron ocasionados por la señora Nilda Mundo.
5. La causa exclusiva de los daños reclamados en la demanda se debieron al orificio que tenía la bañera del apartamento 908. Luego de reemplazada la misma por una ducha de piso, cesaron las filtraciones que afectaban el apartamento de Ortiz Santiago, provenientes del apartamento de la señora Mundo.
6. El 12 de abril de 1999 se realizaron pruebas con tintes especiales en los baños del apartamento 908, para determinar si en ese momento habían filtraciones que afectara el apartamento del demandante. El resultado de la prueba pericial realizada con tintes demostró que no había filtración desde el apartamento 908 al apartamento del demandante.
7. A tenor con la prueba pericial presentada (Exhibit 9 de la parte codemandada Tiri), el daño a los efectos sufridos en el apartamento 808 fueron el resultado del liqueo producido por defectos de problemas sanitarios desde el apartamento 908 que penetraron por el piso (techo) y por el tubo de desagüe que son propiedad del condominio. La referida opinión fue emitida por el plomero Heriberto Soto Rodríguez que el 28 y 29 de abril de 1999, a solicitud del licenciado Edwin Belén Trujillo, se presentó al condominio Mundo Feliz e inspeccionó el cuarto de baño del apartamento 808, así como el baño del apartamento 908. Otro plomero, el 14 de noviembre de 1997 de nombre Rafael Monte Chiclana certificó luego de examinar el baño de dicho apartamento 808 que los daños causados en las paredes de los baños de dicho apartamento fueron ocasionados por filtraciones provenientes del apartamento 908, debido a que en el mismo había un liqueo que bajaba por el acceso entre ambos apartamento.
8. El demandante también admitió que en los apartamentos localizados en los pisos 10 y 11 también se realizaron pruebas con tintes y no hubo filtración hacia los pisos inferiores. Inclusive, el demandante admitió que luego de repararse la bañera de Mundo, la prueba no demostró que llegara el líquido o tinte de prueba a su apartamento.
9. Para la fecha de los hechos alegados en la demanda, la parte codemandada Seguros Triple S, Inc. tenía expedida y en vigor la póliza Núm. CMP-036418-58 Tipo “Comercial Package Police” a favor de la Asociación de Condómines Mundo Feliz, con fecha de efectividad del 14 de enero de 1996 al 14 de enero de *301 1997. Como parte de la póliza suscrita por Seguros Triple S, Inc. se incluyó la forma de responsabilidad pública núm. CG000110934, la cual expresamente dispone que la póliza emitida únicamente cubriría los daños a la propiedad de terceros causados por una “ocurrencia”, citados en la póliza como “ocurrence”. La póliza suscrita por Triple S define una ocurrencia como un accidente.
10. El Tribunal de Circuito de Apelaciones dictó sentencia el 29 de noviembre de 2002, haciendo determinaciones de hechos y de derecho sobre, la póliza de seguro emitida por la parte codemandada Nationwide Mutual Insurance Co. desestimando el pleito de autos en su contra.
Finalmente, mediante Sentencia de 16 de septiembre de 2003, se desestimó la demanda en cuanto a todos los demandados. En relación a la Sociedad de Gananciales López Rivera, se ordenó el archivo con perjuicio de la reclamación en su contra por razón a que nunca fueron emplazados.
Inconforme con el dictamen, Ortiz Santiago señaló en su recurso que el foro de instancia incurrió en error: a) al dictar sentencia declarando sin lugar la demanda, sin considerar la prueba oral y documental aportada; b) al declarar no ha lugar su causa de acción contra la señora Mundo, cuando ésta en corte abierta admitió que las filtraciones de aguas usadas que afectaban su apartamento, provenían de la bañera de uno de los cuartos de baño de su apartamento; c) al declarar sin lugar su causa de acción contra Tiri; d) al declarar con lugar la sentencia sumaria instada por Triple S; y, e) al declarar sin lugar su moción solicitando hechos adicionales y conclusiones de derecho y enmienda a la sentencia.
III
El Articulo 1802 de nuestro Código Civil, 31 L.P.R.A. § 5141, dispone que todo aquel “que por acción u omisión causa daño a otro, interviniendo culpa o negligencia, está obligado a reparar el daño causado.” Nuestro Tribunal Supremo ha definido el concepto de daño como todo aquel menoscabo material o moral que sufre una persona en sus bienes naturales, en su propiedad o en su patrimonio como consecuencia de la violación de una norma jurídica. Galib Frangle v. El Vocero de P.R., 138 D.P.R. 560, 571 (1995); Santini Rivera v. Serv. Air, Inc., 137 D.P.R. 1, 7 (1994); García Pagán v. Shiley Caribbean, etc. 122 D.P.R. 193, 205-206 (1988).
En nuestro sistema de derecho, la obligación de presentar la evidencia para sostener su causa de acción la tiene el demandante. Regla 10(b) de Evidencia, 32 L.P.R.A. Ap. IV, R. 10 (b).
Para que exista una acción de daños y perjuicios es necesario que el demandante demuestre: (a) la ocurrencia de un daño; (b) una acción u omisión negligente; c) y la correspondiente relación causal entre el daño y la conducta culposa o negligente. Montalvo Feliciano v. Cruz Concepción, 144 D.P.R. 748, 755 (1998); Miranda v. E.L.A., 137 D.P.R. 700, 706 (1994); Santini Rivera, 137 D.P.R., a la pág. 6.
La culpa o negligencia es la falta de debido cuidado, esto es, el no anticipar y prever las consecuencias racionales de un acto, o la omisión de un acto, que una persona prudente habría de prever en las mismas circunstancias. Montalvo Feliciano, 144 D.P.R., a la pág. 755; Miranda., 137 D.P.R., a la pág. 711. No obstante, este deber de prevención se circunscribe a prever las consecuencias generales de cada caso, no las consecuencias exactas que puedan acontecer. Montalvo Feliciano, 144 D.P.R., a la pág. 756.
Ahora bien, recientemente nuestro más alto foro resolvió que existe responsabilidad absoluta del dueño de la casa o apartamento donde se arrojan objetos y ello incluye, las filtraciones de agua. No obstante, el demandante debe probar el nexo causal entre la caída de agua (filtración) y los demás daños causados, aunque no tiene que probar negligencia. Berio Suárez v. Royal Ins. Co. of P.R., Op. de 20 de mayo de 2005, 2005 J.T.S. 76, alas págs. 1254-1255. Véase, Artículo 1810 del Código Civil, 31 L.P.R.A. § 5150.
*302 En cuanto a la apreciación de la prueba desfilada ante el Tribunal de Primera Instancia, nuestro Tribunal Supremo reiteradamente ha señalado que en cuanto el alcance de la revisión judicial sobre cuestiones de hecho está regulado por lo dispuesto en la Regla 43.2 de Procedimiento Civil, 32 L.P.R.A. Ap. Ill, R. 43.2, la cual, en lo pertinente, dispone que:

“...las determinaciones de hechos basadas en testimonio oral no se dejarán sin efecto a menos que sean claramente erróneas, y se dará la debida consideración a la oportunidad que tuvo el tribunal sentenciador para juzgar la credibilidad de los testigos... ”.

Por ello, nuestro alto foro ha establecido que no debemos intervenir con las determinaciones de hechos que hace un Tribunal de Primera Instancia y sustituir nuestro criterio, por el del juzgador ante quien declararon los testigos y quien tuvo la oportunidad de verlos declarar y apreciar su demeanor. Ramos Acosta v. Caparra Dairy Inc, 113 D.P.R. 357, 365 (1982).
"... y es que no sólo habla la voz viva. También hablan las expresiones mímicas: el color de las mejillas, los ojos, el temblor o consistencia de la voz, los movimientos, el vocabulario no habitual del testigo, son otras tantas circunstancias que deben acompañar el conjunto de una declaración testifical y sin embargo, todos estos elementos se pierden en la letra muda de las actas, por lo que se priva al Juez de otras tantas circunstancias que han de valer, incluso, más que el texto de la declaración misma para el juicio valorativo que ha de emitir en el momento de fallar; le faltará el instrumento más útil para la investigación de la verdad; la observación...”. Ortiz v. Cruz Pabón, 103 D.P.R. 939, 947 (1975).
De ahí la norma trillada de “no intervenir con la apreciación que de la prueba desfilada haya hecho el foro de instancia en ausencia de pasión, prejuicio, parcialidad o error manifiesto”. Monllor Arzola v. Sociedad de Gananciales, 138 D.P.R. 600, 610 (1995); Sánchez Rodríguez v. López Jiménez, 116 D.P.R. 172, 181 (1985); Pérez Cruz v. Hospital La Concepción, 115 D.P.R. 721, 728 (1984). No obstante, “[ejl arbitrio del juzgador de hechos es respetable, mas no es absoluto. Una apreciación errónea de la prueba no tiene credenciales de inmunidad frente a la función revisora de este Tribunal”. (Citas Omitidas.) Ramos Acosta, 113 D.P.R., alapág. 365.
Así pues, los foros apelativos pueden dejai' sin efecto las determinaciones de hechos realizadas por el foro de instancia, siempre que “del examen de la totalidad de la evidencia el Tribunal de revisión queda definitiva y firmemente convencido que un error ha sido cometido, como es el caso en que las conclusiones de hecho están en conflicto con el balance más racional, justiciero y jurídico de la totalidad de la evidencia recibida”. Véase, Maryland Casualty Co. v. Quick Const. Corp., 90 D.P.R. 329, 336 (1964). Además, es principio cardinal de derecho que este Tribunal, en el ejercicio de su facultad revisora, tiene amplia discreción en la apreciación de la prueba pericial y documental ofrecida, encontrándose en la misma posición que los tribunales de instancia y pudiendo aun adoptar su propio criterio en la apreciación de ella. Hernández Barreras v. San Lorenzo Construction, Op. de 20 de febrero de 2001, 2001 J.T.S. 22, a las págs. 877-878; Moreda v. Rosselli, 150 D.P.R. 473, 479 (2000); Cruz v. Centro Médico de P.R., 113 D.P.R. 719, 721 (1983); Velázquez v. Ponce Asphalt, 113 D.P.R. 39, 48 (1982). No obstante, nuestra decisión debe estar fundada en la prueba vertida en el juicio pol-los peritos y la prueba documental. En ausencia de prueba, no es nuestra función establecer a este nivel apelativo los elementos requeridos por la causa de acción. Ríos Ruiz v. Mark, 119 D.P.R. 816, 821-822 (1987).
Por lo general, los tribunales revisores no intervienen con el manejo de los casos por el Tribunal de Primera Instancia, "salvo que se demuestre que hubo un craso abuso de discreción o que el tribunal actuó con p[rej-juicio y parcialidad, o que se equivocó en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo, y que nuestra intervención en esa etapa evitará un perjuicio sustancial". Zorniak Air Services v. Cessna Aircraft Co., 132 D.P.R. 170, 181 (1992). Véase también, Lluch v. España Service Sta., 117 D.P.R. 729, 745 (1986). En cuanto al alcance de la discreción que ampara al Tribunal de Primera Instancia en la *303 tramitación de los casos, también se ha reconocido bastante amplitud, más aún cuando se trata del manejo de casos complejos. Vives Vázquez v. E.L.A., 142 D.P.R. 117, 141 (1996).
En el caso ante nuestra consideración, no es correcto que el TPI no considerara la prueba oral y documental de Ortiz Santiago al llegar a su decisión de desestimar todas sus reclamaciones, como alega éste, en su primer error. Las propias Determinaciones de Hechos que hemos señalado con anterioridad, recogen en gran parte la prueba presentada por Ortiz Santiago. Téngase presente la norma trillada de “no intervenir con la apreciación que de la prueba desfilada haya hecho el foro de instancia en ausencia de pasión, prejuicio, parcialidad o error manifiesto”, o que las mismas no estén sostenidas por la prueba o evidencia presentada. Méndez v. Morales, 142 D.P.R. 26, 36 (1996); Rivera v. Cruz Corchado, 119 D.P.R. 8, 14 (1987). Del análisis a la transcripción de la prueba presentada por Ortiz Santiago, no percibimos razón alguna para intervenir con la apreciación que de ésta hiciera el TPI. El hecho de que éste esté insatisfecho con las Determinaciones de Hechos que hiciera el TPI no es razón para su alteración o modificación, sobre todo cuando el balance más racional, justiciero y jurídico esta en su contra. En consideración a lo cual, el primer error no fue cometido.
A base de los hechos probados e incontrovertidos, el TPI concluyó que apenas unos meses después de que Ortiz Santiago, ingeniero de profesión, adquiriera el apartamento 808 del Condominio Mundo Feliz, éste tenía pleno conocimiento de que la filtración que afectaba su apartamento, próximo a adquirir, era ocasionada, únicamente, por el estado de deterioro en que se encontraba la bañera del apartamento 908 del referido Condominio. Compró reconociendo la existencia del daño a la pintura y con conocimiento y entrenamiento personal especial para conocer la extensión o magnitud de éste. Por otro lado, quedó comprobado que la causa o razón exclusiva de los daños por él reclamados se debió al orificio en la bañera del apartamento 908. Tal determinación es producto tanto de la sentencia emitida por el TCA el 29 de noviembre de 2000, como del convencimiento al que llegó el TPI luego de escuchados los testimonios y considerado la prueba documental ofrecida y admitida. Así también, las pruebas realizadas posteriormente en el 1999, demostraron que la alegada filtración en el apartamento 908 había cesado, así como la de los apartamentos localizados en niveles superiores. Es decir, no obstante la señora Mundo haber admitido en un principio responsabilidad por las filtraciones, eventualmente corrigió el problema, cesando las filtraciones que afectaban el apartamento de Ortiz Santiago. En consideración a ello, el segundo error no fue cometido.
En cuanto a Tiri, el pleito realmente es una contumacia. Con un relevo tan claro, firmado por un litigante que es un profesional de la ingeniería y que sabía claramente de lo que se trataba, ello raya en la temeridad.
En las cláusulas del Contrato de Opción firmado por Ortiz Santiago se expresaba claramente lo siguiente:

“Deed of sale is to be prepared by the Attorney of Seller’s choice and'executed on-or before December 22, 1995.

It is understood that TIRI/BHG is acting as agent in this sale and it is in no way responsible in this case of non-compliance by either the Buyer or the Seller and incurs no responsibility for any defects' in construction, manufacturing of appliances or fixtures, or errors in the title of defects in construction, manufacturing of appliances or fixtures, or errors in the title of the property. Neither is TIRI/BHG responsible for Sellers or Buyers failure to disclose information of which TIRI/BGH had no knowledge, or if both parties do not reach an agreement. ”

Además, el relevo aceptado y firmado por Ortiz Santiago disponía claramente lo siguiente:

“Release of Liability

*304
The undersigned, buyer(s) of the property located at Apt. 808 Cond. Mundo Feliz, Carolina, Puerto Rico, will receive $100 and hereby release TIRI/Better Plomes and Gardens and PHH Relocation from all and any responsibility and or claims for any and all defects or vices in the property. ”

Acorde con lo antes citado, Tiri no responde por vicios ocultos, defectos o vicios aparentes. En este caso, ni son vicios ocultos ni mucho menos defectos o vicios aparentes, pues se trata de un liqueo rutinario, usual, ampliado por la imaginación de Ortiz Santiago fuera de toda proporción real. Tiri no es responsable en ninguna circunstancia. Análogo a lo anterior, la Ley Núm. 130 de 13 de junio de 1967, mejor conocida como Ley de la Oficina del Oficial de Construcción, 17 L.P.R.A. § 502, dispone:

“§ 502. Definiciones

d) “Urbanizador o Constructor" significará toda persona que se dedique al negocio de la construcción en calidad de empresario o principal responsable de la promoción, diseño, venta, construcción de obras de urbanización para vivienda, o de la construcción en grande escala de viviendas, bien del tipo individual o multipisos. El término no incluye al corredor de bienes raíces, por lo cual éste no será responsable por los defectos de construcción de las viviendas construidas y cubiertas por este capítulo, ”

Así también, las responsabilidades del corredor de bienes raíces nacen del contrato de corretaje. El Artículo 4, sección 5 del Reglamento para Implementar la Ley Núm. 10 del 26 de abril de 1994, conocida como “Ley para Reglamentar el Negocio de Bienes Raíces y la Profesión del Corredor, Vendedor y Empresas de Bienes Raíces de Puerto Rico”, dispone lo siguiente:

“Contrato de Corretaje- contrato mediante el cual una persona, a cambio de una retribución, se obliga a prestarle servicios a otra como intermediario con un tercero para llevar a cabo una transacción de bienes raíces, según definida en la ley o en este reglamento.

Lo característico de la actuación de la persona obligada a prestar servicios consiste en que se limita a poner en relación directa o indirecta a los futuros contratantes sin participar en ella principalmente en el contrato, ni como representantes de una de las partes ni como simple mandatario o comisionista suyo, es decir queda siempre fuera del contrato resultante de su actividad. ”

Nuestro alto foro en Col. Int'l Sek P.R., Inc. v. Escribá, 135 D.P.R. 647, 655 (1994), expresó:

“...aquel por el cual uno se obliga a pagar a otro (el corredor) una remuneración (la comisión) por la información de la ocasión para concluir un contrato o por la mediación de un contrato. El corredor interviene para mediar entre dos personas a las que pondrá en relación para que contraten entre sí. El derecho a cobrar la comisión depende de la efectiva celebración de un contrato en el que el corredor no interviene como parte. ”

Al igual que Tiri, coincidimos totalmente con lo expresado por el TPI al indicar: “Un corredor de bienes raíces es exclusivamente un mediador o intermediario entre las partes del negocio. No forma parte del contrato. ”
Ello es cónsono con lo resuelto en Col. Int'l Sek P.R., Inc., citando al tratadista Puig Brutau:

“a. Que lo característico de la actuación del mediador consiste en que se limite a poner en relación directa o indirecta a los futuros contratantes, sin participar personalmente en el contrato, ni como representante de una de las partes, ni como simple mandatario o comisionista suyo; es decir, queda siempre fuera del contrato resultante de su actividad. ”

*305 A nuestro juicio, es correcta la conclusión de derecho del TPI de que Tiri no tiene responsabilidad alguna, por lo cual el error no fue cometido.
Por otra parte, consideramos que es incorrecta la inferencia de Ortiz Santiago sobre el hecho de que un espacio en blanco después de Doy Fe, en una escritura de compraventa convierta el documento en nulo. No es ni tan siquiera anulable. 4 L.P.R.A., Ap. XXIV, Reglas 22, 34 y 45. La Ley Notarial dispone que el último folio de una escritura tiene que estar firmado por todos los comparecientes. No obstante, guarda silencio en cuanto a lo que debe contener entre la última oración de la escritura y la primera firma. Sólo exige que la última firma en el instrumento público sea la del notario autorizante. En la mayoría de los casos, el otorgante por iniciativa propia, firma dejando un espacio en blanco.
La gestión notarial es una que requiere responsabilidad, investigación, preparación y mucho cuidado. Muchas veces, a pesar de todos los preparativos, el notario no se entera hasta el momento del cierre que las circunstancias de los otorgantes o del negocio jurídico han cambiado. La Ley Notarial permite la inclusión en el documento de una salvedad, para poder proceder con el otorgamiento. Lo ideal es que la inclusión de la salvedad se haga en el documento al momento del otorgamiento para beneficio de todos los comparecientes.
La selección del Notario dependerá de lo que disponga la Ley o del acuerdo de los comparecientes. En las compraventas, salvo pacto en contrario, lo decide el comprador. Sin embargo, hay casos en que una parte prácticamente no puede decidirlo, como ciertas ventas e hipotecas en que el poder económico juega un papel importante. En Puerto Rico, bancos y compañías de financiamiento hipotecarias imponen los servicios de un Notario, cuyos honorarios serán satisfechos por el cliente. Es decir, el comprador escoge la institución financiera que utilizará para financial- la compra, entendiéndose que el cliente da su consentimiento, implícitamente, a que los abogados de la institución preparen las escrituras y presenten todos los documentos, incluyendo la copia certificada de las escrituras al Registro de la Propiedad.
En el contrato de opción surge claramente que Ortiz Santiago aceptó y pactó que el vendedor escogería el Notario para el otorgamiento de las escritura de compraventa o cierre. Se desprende del contrato de opción en cuanto a la preparación de las escrituras lo siguiente: “Deed of Sale is to be prepared by the Attorney of Seller’s choice and executed on or before December 22, 1995.”
Por ende, son correctas las conclusiones del TPI al indicar:

“Por otro lado, no hay relación causal alguna entre la forma y manera en que se otorgó la escritura pública o sobre quién selecciona el notario autorizante de la misma y los daños ocasionados por filtraciones al apartamento propiedad del demandante.

Concluimos, además, que las escrituras públicas otorgadas entre las partes se otorgaron en cumplimiento con las leyes vigentes. No se presentó prueba alguna que nos convencieran de que las mismas deban declararse inválidas. Por consiguiente, tanto la escritura de compraventa otorgada por el demandante como la escritura de constitución de hipoteca son válidas en derecho. ”

En consideración a lo cual, el tercer error identificado con la letra c no fue cometido.
Pasemos al cuarto error, declarar el TPI con lugar la solicitud de sentencia sumaria de Triple S.
La Regla 36.2 de Procedimiento Civil, 32 L.P.R.A. Ap. Ill, R. 36.2, dispone parcialmente que una parte contra la cual se haya presentado una demanda podrá presentar una moción basada o no en declaraciones juradas, para que se dicte una sentencia sumaria a su favor sobre la totalidad o cualquier parte de la reclamación presentada en su contra. Por otro lado, la Regla 36.3 del mismo cuerpo procesal, establece en lo pertinente:

*306
“La sentencia solicitada se dictará inmediatamente si las alegaciones, deposiciones, contestaciones a interrogatorios y admisiones ofrecidas, en unión a las declaraciones juradas, si las hubiere, demostraren que no hay controversia real sustancial en cuanto a ningún hecho material y que como cuestión de derecho debe dictarse sentencia sumaria a favor de la parte promovente. ”

Además, la Regla 36.5 de Procedimiento Civil dispone:

“Cuando se presente una moción solicitando que se dicte sentencia sumaria y se sostenga en la forma provista en la Regla 36, la parte contraria no podrá descansar solamente en las aseveraciones o negaciones contenidas en sus alegaciones, sino que vendrá obligada a contestar en forma tan detallada y específica como lo hubiere hecho la parte promovente, exponiendo aquellos hechos pertinentes a la controversia que demuestren que existe una controversia real que debe ser dilucidada en-un juicio. De no hacerlo así, se dictará en su contra la sentencia sumaria, si procediere. ”

El propósito cardinal de la sentencia sumaria es promover una solución justa, rápida y económica de la litigación, abreviando la disposición de pleitos en los cuales un juicio en su fondo se hace innecesario por no haber una genuina controversia de hechos. Revlon Realistic, Inc. v. Las Americas Trust Company, 135 D.P.R. 363 (1994); Rivera Santana v. Superior Packing, 132 D.P.R. 115 (1992); Tello Rivera v. Eastern Airlines, 119 D.P.R. 83 (1987); Padín v. Rossi, 100 D.P.R. 259 (1971); Roth v. Lugo, 87 D.P.R. 386 (1963). La parte que se proponga derrotar una solicitud de sentencia sumaria debe presentar, como regla general, "contradeclaraciones" juradas y "contradocumentos" que pongan en controversia los hechos presentados por la parte promovente. Toledo v. Cartagena, 132 D.P.R. 249 (1992); Cuadrado Lugo v. Santiago Rodríguez, 126 D.P.R. 272 (1990); Tello Rivera, 119 D.P.R., a la pág. 87; Corp. Presiding Bishop CJC of LDS v. Purcell, 117 D.P.R. 714 (1996).
Si la parte que solicita la sentencia sumaria presenta la prueba en que descansa su caso, la otra parte está en la obligación de demostrar que tiene prueba para sostener el suyo. De surgir que no existe una controversia real de hechos, entonces la parte opositora no podrá descansar meramente en aseveraciones generales contenidas en sus alegaciones, sino que estará obligada a demostrar que tiene prueba para sustentar las mismas. Cortés Piñero v. Sucn. A. Cortés, 83 D.P.R. 685 (1961). La moción de sentencia sumaria obliga a presentar las pruebas que se utilizarían en el juicio para apoyar una alegación. Su efecto real es adelantar incidentes que podrían ocurrir en el juicio. A través de este mecanismo, el tribunal puede considerar prueba que, de no ser adecuadamente refutada, permite que se disponga del pleito a favor de alguna de las partes, sin la necesidad de efectuar un juicio en su fondo. Cuadrado Lugo, 126 D.P.R., a la pág. 279.
Quien solicite la sentencia sumaria viene obligado a demostrar que no hay controversia genuina de hecho a ser juzgada. Es deber del juzgador determinar si existe una controversia de hecho sustancial; si la hay, ésta debe dirimirse en el juicio correspondiente. Valcourt Questell v. Tribunal Superior, 89 D.P.R. 827 (1964); Gaztambide v. Sucn. Ortiz, 70 D.P.R. 412 (1949). A los fines de considerar una moción de sentencia sumaria, el juzgador ha de presumir ciertos todos los hechos no controvertidos que se hacen constar en los documentos y declaraciones juradas admisibles que se acompañan con la moción. Corp. Presiding Bishop CJC of LDS, 117 D. P.R., a la pág. 721; Municipio v. Tribunal Superior, 78 D.P.R. 816 (1955).
Para la fecha de los hechos a que se contrae la demanda, Triple S tenía expedida y en vigor la póliza número CMP-036418-58 tipo “commercial package policy” a favor de la Asociación de Condómines del Condominio Mundo Feliz con efectividad del 14 de enero de 1996 al 14 de enero de 1997. La póliza contiene la cubierta de responsabilidad pública número CG000110934, en la que expresamente se dispone que la póliza emitida cubrirá únicamente los daños a la propiedad de terceros causados por un accidente.
Conforme a los hechos incontrovertidos establecidos por Triple S en su moción de sentencia sumaria, procedía que se dictara sentencia sumariamente a su favor, al igual que hizo el TCA con anterioridad en cuanto *307 a Nationwide. Téngase en consideración que la aseguradora estableció que a la luz de los términos de la póliza, no se ofrecía cubierta por daños como los alegados por Ortiz Santiago, ya que, en todo caso, éstos no eran el producto o causa de un accidente ("occurrence").
Los daños reclamados por Ortiz Santiago no están cubiertos por la póliza de seguro expedida por Triple S a favor de la Junta. Dicha conclusión resulta forzosa, ante el hecho claro y no controvertido de que la situación que produjo los alegados daños no constituye un accidente al amparo deTos claros términos de la póliza. El deber de la aseguradora con respecto a su asegurado se mide en primer término por las alegaciones del demandante. Dichas alegaciones tienen que describir hechos que coloquen el daño reclamado dentro de la cubierta de la póliza, lo que no ocurrió en este caso. Véase Guerrido García v. U.C.B, 143 D.P.R. 337 (1997); Vega v. Pepsi-Cola Bot. Co., 118 D.P.R. 661 (1987). Por lo cual, no se cometió el error alegado.
Pasemos a considerar el quinto y último error, declarar sin lugar la solicitud de hechos adicionales y conclusiones de derecho solicitadas por Ortiz Santiago.
La Regla 43.2 de Procedimiento Civil, 32 L.P.R.A. Ap. Ill, R. 43.2, dispone, en lo pertinente, que en todos los pleitos, el tribunal especificará los hechos probados y separadamente consignará sus conclusiones de derecho y ordenará que se registre la sentencia que corresponda. Por su parte, la Regla 43.3 de Procedimiento Civil, supra, regula las enmiendas o determinaciones iniciales o adicionales. Dicha Regla dispone como sigue:
“No será necesario que se consignen determinaciones de hechos a los efectos de una apelación o revisión, pero a moción de parte presentada a más tardar diez (10) días después de haberse archivado en autos copia de la notificación de la sentencia, el tribunal podrá hacer las determinaciones de hechos y conclusiones de derecho iniciales correspondientes, si es que éstas no se hubieren hecho por ser innecesarias, de acuerdo a la Regla 43.2, o podrá enmendar o hacer determinaciones adicionales, y podrá enmendar la sentencia de conformidad. La moción se podrá acumular con una moción de reconsideración o de nuevo juicio de acuerdo con las Reglas 47 y 48 respectivamente. En todo caso, la suficiencia de la prueba para sostener las determinaciones podrá ser suscitada posteriormente aunque la parte que formule la cuestión no las haya objetado en el tribunal inferior, o no haya presentado moción para enmendarlas, o no haya solicitado la sentencia.

La moción de determinaciones de hechos adicionales se notificará a las demás partes en el pleito dentro de los diez (10) días establecidos por esta regla para presentar la misma ante el tribunal. El término para notificar será de cumplimiento estricto. ”

Como razón de ser de la solicitud al tribunal sentenciador para que determine hechos específicos y consigne sus conclusiones de derecho, se ha dicho que se le debe brindar al juez de instancia una oportunidad para que éste quede satisfecho de que ha atendido todas las controversias de forma propia y completa, y, además, permitirle a las partes y al foro apelativo estar completamente informados de la base de la decisión o dictamen emitido por el tribunal primario. José A. Cuevas Segarra, Tratado de Derecho Procesal Civil, Tomo II, San Juan: Publicaciones JTS, 2000, a la pág. 695; véase además, Firpo v. Pan American World, 89 D.P.R. 197, 218-219 (1963); Wright & Miller, 9 Federal Practice and Civil Procedure, 2d ed., sec. 2582.
Así, cualquiera de las partes en un pleito puede solicitar del tribunal que corrija o enmiende sus determinaciones de hechos o conclusiones de derecho iniciales, o formule determinaciones de hechos o conclusiones de derecho adicionales a las que inicialmente formuló, para que la sentencia quede adecuadamente fundamentada. Rafael Hernández Colón, Práctica Jurídica de Puerto Rico, Derecho Procesal Civil, San Juan: Michie de Puerto Rico, 1997, see. 5001, a la pág. 314.
En lo relativo a la moción de determinaciones de hechos adicionales, hemos de recordar que dicho *308 mecanismo, utilizado legítimamente, va dirigido a la consecución de un ideal de justicia exento de errores. Roldán v. Lutrón, 151 D.P.R. 883 (2000). En vista de tal propósito, hemos expresado que, en su proyección adjudicativa inmediata, su razón de ser es brindarle al tribunal sentenciador la oportunidad de enmendar o coxxegir cualquier error cometido; esto es, hacer cumplida justicia. Dumont v. Inmobiliaria Estado Inc., 113 D. P.R. 406 (1982). Dicha moción se presenta para que el tribunal que dictó la sentencia la corrija mediante enmiendas formulando determinaciones de hechos, a base de la prueba presentada en el juicio, o conclusiones de derecho pertinentes al fallo. Rafael Hernández Colón, Práctica Jurídica de Puerto Rico, Derecho Procesal Civil, ala pág. 314.
De las disposiciones de la Regla 43.3 de Procedimiento Civil, se desprende y resulta obvio que el tribunal de instancia no está obbgado a hacer determinaciones de hechos y de derecho adicionales luego de ser solicitadas por una o más partes; ello, de estimar que las mismas no proceden. Blás v. Hosp. Guadalupe, 146 D.P.R. 267, 319 (1998). Ciertamente, el juez tiene discreción para denegar tal moción, pues, en esencia, sólo procede para corregir errores manifiestos de hechos o de derecho. José A. Cuevas Segarra, Tratado de Derecho Procesal Civil, a la pág. 695.
Conforme lo anterior, en el citado caso de Blás v. Hosp. Guadalupe, 146 D.P.R., a la pág. 319, nuestro Tribunal Supremo expresó que la utilización de la palabra podrá en el texto de la propia disposición reglamentaria, le imparte un carácter discrecional para que el juez evalúe si realmente procede hacer las determinaciones que le hayan sido solicitadas. Incluso podemos apreciar que la regla advierte claramente que el tribunal podrá enmendar las determinaciones iniciales, y podrá enmendar la sentencia de conformidad.
Es principio fundamental en derecho que para que proceda una moción al amparo de la Regla 43.3, ante, ésta ha de exponer cuestiones sustanciales relacionadas con determinaciones de hechos o conclusiones de derecho materiales. La práctica forense exige que toda moción sobre determinaciones de hechos adicionales o de enmienda, constituya una propuesta que exponga, con suficiente particularidad y especificidad, los hechos que el promovente estima probados y fundarse en cuestiones sustanciales relacionadas con determinaciones de hechos pertinentes. José A. Cuevas Segarra, Tratado de Derecho Procesal Civil, a la pág. 695.
En nuestro ordenamiento jurídico se ha entendido que la discreción es " una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera". Bco. Popular de P.R. v. Mun. de Aguadilla, 144 D.P.R. 651, 658 (1997); Pueblo v. Ortega Santiago, 125 D.P.R. 203, 211 (1990); Pueblo v. Sánchez González, 90 D.P.R. 197, 200 (1964). Dentro del ámbito judicial, el concepto de discreción "no significa poder para actuar en una forma u otra, haciendo abstracción del resto del Derecho". Sánchez González, 90 D.P.R., a la pág. 200; Bco. Popular de P.R., 144 D.P.R., a la pág. 658. El actuar de esa manera constituye claramente un abuso de discreción.
De conformidad con el trasfondo jurisprudencial antes citado, Ortiz Santiago no ha presentado ante este foro evidencia suficiente tendente a establecer que el TPI abusó de su discreción al denegar su solicitud de determinaciones de hechos adicionales y conclusiones de derecho. En consecuencia, el alegado error no fue cometido.
Finalmente y no menos importante, Ortiz Santiago no presentó prueba confiable que sostuviera los daños reclamados, aun bajo la doctrina de responsabilidad absoluta. Por lo tanto, aun bajo el supuesto de que se imponga responsabilidad absoluta como requiere la jurisprudencia reciente del Tribunal Supremo, no se probaron los daños y por ende no procede concederse compensación alguna. No presentó ni una sola factura para evidenciar los gastos en los cuales éste alegó haber incurrido en la reparación de su apartamento. En cuanto a los daños a su persona, no presentó evidencia de prescripción o receta médica, o de haber sido atendido por algún perito siquiatra o terapista profesional. Tampoco presentó evidencia relacionada a ausencias de su trabajo.
*309 Por los fundamentos anteriormente expuestos, confirmamos la sentencia apelada.
Lo acordó el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.
Lama M. Velez Velez
Secretaria del Tribunal de Apelaciones