ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL ESPECIAL
OATA-2023-131[1]

| C.A.C. CRESPO BUILDERS, LLC<br><br>Demandante-Apelado<br><br>Vs.<br><br>DR. JUAN VÁZQUEZ NIEVES, FULANA DE TAL, ESPOSA DE JUAN E. VÁZQUEZ, CONSEJO DE TITULARES DEL CONDOMINIO CONSOLIDATED MALL<br><br>Demandados-Apelantes<br><br>Vs.<br><br>TRAVELERS CASUALTY AND SURETY COMPANY; LIBERTY MUTUAL INSURANCE COMPANY<br><br>Terceros Demandados | KLAN202300459 | *APELACIÓN* procedente del Tribunal de Primera Instancia, Sala Superior de Caguas<br><br>Caso Núm.<br><br>CG2021CV00431<br><br>Sala: 702<br><br>Sobre:<br><br>Cobro de Dinero, Daños, Incumplimiento de Contrato |

Panel integrado por su presidente, el Juez Rivera Colón, el Juez Ronda del Toro y el Juez Cruz Hiraldo.

Cruz Hiraldo, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 29 de octubre de 2024.

Comparece el Consejo de Titulares del Condominio Consolidated Mall (en adelante, parte apelante o el Condominio) para solicitarnos que se revoque la *Sentencia Parcial* emitida el 17 de febrero de 2023 y notificada el 22 de febrero del mismo año por el Tribunal de Primera Instancia, Sala Superior de Caguas (en adelante TPI), en la cual desestimó con perjuicio *la Demanda Contra Tercero* presentada por el Condominio contra Liberty Mutual Insurance Company (en lo sucesivo, Liberty) y la *Demanda Contra*

---

[1] Mediante la Orden Administrativa OATA-2023-131 se designa al Juez Joel A. Cruz Hiraldo en sustitución de la Jueza Karilyn M. Díaz Rivera.

*Coparte y/o Tercero Demandado* presentada por C. A. C. Crespo Builder, LLC (a continuación, "CAC") contra Liberty.

La parte apelada, Liberty, compareció mediante *Alegato en Oposición.* La parte apelada CAC no compareció.

Por los fundamentos que expondremos a continuación, se *confirma* la *Sentencia Parcial* apelada.

**-I-**

El 19 de febrero de 2021 CAC presentó una *Demanda* en cobro de dinero e incumplimiento de contrato, en contra de cada uno de los miembros de la Junta de Directores del Consejo de Titulares del Condominio Consolidated Mall en su carácter personal.[2] En esencia, arguyó que fue contratado para realizar unos trabajos de mitigación y rehabilitación del área común de los tres edificios que componían el complejo. El 23 de julio de 2021, CAC presentó una *Demanda Enmendada* para incluir como parte al Consejo de Titulares del Condominio Consolidated Mall, y al Doctor Salvador Carrión, expresidente de la Junta de Directores de dicho condominio.[3]

El 15 de diciembre de 2021, el Condominio presentó una *Contestación a Demanda Enmendada y Reconvención*, alegando daños por incumplimiento de contrato.[4] A su vez, el 20 de enero de 2022, el Condominio presentó una *Demanda Contra Tercero* mediante la cual acumuló a Travelers Casualty and Surety Company (en adelante, Travelers) y a Liberty al pleito. En cuanto a Liberty, el Condominio alegó que dicha aseguradora emitió las pólizas DGL-PR-754822-1 y 1000294370-01, esta última del tipo *umbrella* a favor de CAC. La parte apelante adujo que, Liberty como aseguradora de CAC respondía por los daños reclamados en su *Reconvención.*

---

[2] Apéndice 1 del Recurso de Apelación, págs. 1-18.
[3] Apéndice 32 del Recurso de Apelación, págs. 170-197.
[4] Apéndice 47 del Recurso de Apelación, págs. 273-296.

El 17 de febrero de 2022, el TPI emitió una *Sentencia Parcial* desestimando sumariamente con perjuicio la causa de acción presentada contra los directores individuales, sus cónyuges y las respectivas sociedades legales de gananciales, quedando como parte demandada solamente el Condominio.[5] Posteriormente, el 22 de febrero de 2022, el Condominio presentó una *Contestación a Demanda Enmendada y Reconvención Enmendada*, también alegando daños por incumplimiento de contrato.[6] Luego de varios trámites procesales, el 30 de marzo de 2022, Travelers presentó la *Contestación a Demanda Contra Tercero*.[7]

El 1 de abril de 2022, Liberty presentó *Moción de Desestimación*.[8] Travelers se opuso a la solicitud de Liberty mediante una *Oposición a Solicitud Desestimación Presentada por Liberty* radicada el 15 de junio de 2022,[9] y a una *Moción en Oposición a Escrito Titulado Réplica a Oposiciones a Moción de Desestimación* presentada el 16 de agosto de 2022.[10]

Por su parte, el Condominio se opuso a la *Moción de Desestimación* de Liberty mediante una *Moción en Cumplimiento de Orden y en Réplica a Moción de Desestimación* presentada el 29 de junio de 2022,[11] y una *Dúplica a Réplica a Oposiciones a Moción de Desestimación y Otros Extremos*, presentada el 3 de agosto de 2022.[12]

No obstante, el 10 de noviembre de 2022, CAC presentó una *Demanda contra Coparte y/o Tercero Demandado Liberty Mutual Insurance Company Por Incumplimiento del Contrato de Seguros* en contra de Liberty. Por su parte, Liberty presentó el 18 de noviembre

---

[5] Apéndice 68 del Recurso de Apelación, págs. 348-356.
[6] Apéndice 70 del Recurso de Apelación, págs. 370-397.
[7] Apéndice 89 del Recurso de Apelación, págs. 439-444.
[8] Apéndice 92 del Recurso de Apelación, págs. 447-544.
[9] Apéndice 119 del Recurso de Apelación, págs. 592-595.
[10] Apéndice 137 del Recurso de Apelación, págs. 637-640.
[11] Apéndice 124 del Recurso de Apelación, págs. 602-605.
[12] Apéndice 132 del Recurso de Apelación, págs. 624-627.

de 2022, una *Moción de Desestimación de Demanda Contra Coparte y/o Tercero Demandado.*[13]

No es hasta el 3 de enero de 2023, que entonces CAC presentó *Oposición a Solicitud de Desestimación Presentada por Liberty Mutual Insurance Company.*[14] Subsiguientemente, el 20 de enero de 2023, Liberty presentó una *Réplica a Oposición a Moción de Desestimación de Demanda Contra Coparte y/o Tercero Demandado.*[15] El 2 de febrero de 2023, el TPI emitió una *Orden* en la cual dio por sometida la *Moción de Desestimación.*[16]

El 17 de febrero de 2023 y notificada el 22 de igual mes y año, el TPI dictó *Sentencia Parcial* en la cual desestimó con perjuicio la *Demanda Contra Tercero* presentada por el Condominio contra Liberty y la *Demanda Contra Coparte y/o Tercero Demandado* presentada por CAC contra Liberty.[17] Así las cosas, el 9 de marzo de 2023 la parte apelante presentó *Moción Solicitando Reconsideración de la Sentencia Parcial.* El 28 de marzo de 2023 Liberty presentó *Oposición a Moción de Reconsideración.* El Condominio presentó *Réplica Oposición a Moción de Reconsideración y otros Extremos.*[18] El 22 de abril de 2023 y notificada el 24 de abril del mismo año, el TPI declaró *No Ha Lugar* la *Moción de Reconsideración* presentada por la CAC.

Inconforme con el dictamen emitido, la parte apelante presentó el 24 de mayo de 2023 el recurso de apelación ante nos. En el mismo le imputó al foro de origen los siguientes señalamientos de error:

> PRIMER ERROR: ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL DESESTIMAR CON PERJUICIO LA

---

[13] Apéndice 146-147 del Recurso de Apelación, págs. 662-675.
[14] Apéndice 152 del Recurso de Apelación, págs. 681-692.
[15] Apéndice 156 del Recurso de Apelación, págs. 697-706.
[16] Apéndice 157 del Recurso de Apelación, pág. 707.
[17] Apéndice 158 del Recurso de Apelación, págs. 708-721. Se emitió *Sentencia Parcial* mediante la cual se desestimó la *Demanda* en cuanto a los miembros de la Junta de Directores del Consolidated Mall, así como sus respectivos cónyuges y sociedades de bienes gananciales, la cual advino final y firme.
[18] Apéndice 159-161 del Recurso de Apelación, págs. 722-748.

DEMANDA CONTRA TERCERO, PRESENTADA POR LA PARTE APELANTE CONTRA LIBERTY MUTUAL INSURANCE COMPANY, AL AMPARO DE LA REGLA 10.2, INCISO (5) DE LAS REGLAS DE PROCEDIMIENTO CIVIL DE PUERTO RICO.

SEGUNDO ERROR: ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL NO CONSIDERAR LA MOCIÓN DE DESESTIMACIÓN SOMETIDA POR EL TERCERO DEMANDADO, LIBERTY MUTUAL INSURANCE COMPANY, COMO UNA MOCIÓN DE SENTENCIA SUMARIA, LA QUE DEBE CUMPLIR CON LO ESTABLECIDO POR LA REGLA 36 DE LAS DE PROCEDIMIENTO CIVIL, SEGÚN ENMENDADAS Y LA MOCIÓN PRESENTADA POR LIBERTY NO CUMPLIÓ CON LA REFERIDA REGLA.

TERCER ERROR: ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL DETERMINAR QUE TODAS LAS ALEGACIONES DE LA DEMANDA, CON RESPECTO A LIBERTY MUTUAL IN[C]URANCE COMPANY, APELADA, SE FUNDAMENTAN EN INCUMPLIMIENTO CONTRACTUAL DE LA PARTE DEMANDANTE (CRESPO), CUANDO EN LOS PÁRRAFOS QUE EL APELANTE CITA EN APOYO DE SU ARGUMENTO, AL IGUAL QUE EL RESTO DE LA DEMANDA CONTRA TERCERO, ESTABLECEN LO CONTRARIO.

CUARTO ERROR: ERRÓ EL TRIBUNAL DE PRIMERA INSTANCIA AL DETERMINAR QUE LAS ALEGACIONES DE DAÑOS PRESENTADAS POR LA PARTE APELANTE SON ALEGACIONES DE INCUMPLIMIENTO DE CONTRATO CUANDO, EN EFECTO, SON RECLAMACIONES DE DAÑOS, CONFORME SE DESPRENDE DE LOS INCISOS QUINTO Y SÉPTIMO DE LA DEMANDA. ES DECIR, EN LA DEMANDA SE RECLAMAN DAÑOS Y SE PRESENTAN ALEGACIONES DE INCUMPLIMIENTO DE CONTRATO, AMBAS, SEPARADAS ENTE SI.

Examinado el recurso en su totalidad, procedemos a establecer el derecho aplicable.

### -II-

### -A-

La Regla 10 de Procedimiento Civil, permite a una parte demandada presentar tres (3) clases de mociones antes de contestar la demanda, estas son: (1) una moción de desestimación; (2) una moción para solicitar una exposición más definida; y (3) una moción eliminatoria. 32 LPRA Ap. V, R. 10.2, 10.4 y 10.5 respectivamente. La notificación de alguna de estas mociones interrumpe y altera el término para presentar la alegación responsiva. 32 LPRA Ap. V, R.

10.1; *Conde Cruz v. Resto Rodríguez et al.,* 205 DPR 1043,1065 (2020). **No obstante, en aras de evitar dilaciones innecesarias, la parte que presente una moción al amparo de la regla deberá acumular en esta todas las mociones y defensas a las que entienda que tiene derecho y que la regla contempla**. 32 LPRA Ap. V, R. 10.7. (Énfasis suplido).

Por su parte, la Regla 10.2 de Procedimiento Civil, *supra*, permite que una parte demandada solicite la desestimación de una causa de acción presentada en su contra si resulta evidente que de las alegaciones de la demanda prosperará alguna de las defensas afirmativas que establece la misma regla. Esta moción se basará en al menos uno de los siguientes fundamentos: (1) la falta de jurisdicción sobre la materia o (2) la falta de jurisdicción sobre la persona, (3) insuficiencia del emplazamiento (4) insuficiencia del emplazamiento del diligenciamiento; **(5) dejar de exponer una reclamación que justifique la concesión de un remedio,** o (6) dejar de acumular una parte indispensable. (Énfasis suplido). La parte que presente dicha moción de desestimación deberá acumular todas las defensas que la regla permite o, de no hacerlo, se entenderán renunciadas, con excepción a la defensa de jurisdicción sobre la materia o las contempladas en la Regla 10.8 de Procedimiento Civil. 32 LPRA Ap. V, R. 10.7-10.8; *Conde Cruz v. Resto Rodríguez, supra*, pág. 1066.

De ordinario, al considerarse una moción de desestimación al amparo de esta regla, los tribunales tienen que tomar como cierto y de la forma más favorable para la parte demandante todos los hechos bien alegados en la demanda y que hayan sido aseverados de manera clara y concluyente. *Eagle Security v. Efrón Dorado et al.*, 211 DPR 70, 84 (2023); *Cobra Acquisitions v. Mun. Yabucoa et al.*, 210 DPR 384, 396 (2022). Cónsono con lo anterior, los foros adjudicativos tienen el deber de interpretar las alegaciones de una

demanda de manera conjunta y liberalmente a favor de la parte demandante. *Eagle Security v. Efrón Dorado et al., supra,* pág. 84; *González Méndez v. Acción Social et al.,* 196 DPR 213, 234 (2016).

Para que prevalezca una solicitud de desestimación al amparo de la Regla 10.2, *supra,* el tribunal debe convencerse con certeza que el demandante no tiene derecho a remedio alguno bajo cualquier estado de derecho que se pudiere probar en apoyo a su reclamación, aun interpretando la demanda lo más liberalmente a su favor. *Rivera Sanfeliz et al. v. Jta. Dir. FirstBank,* 193 DPR 38, 49 (2015). Así pues, los foros judiciales deben ponderar si, a la luz de la situación más favorable al demandante y resolviendo toda duda a su favor, la demanda es suficiente para establecer una reclamación válida. *Eagle Security v. Efrón Dorado et al., supra,* pág. 84. Asimismo, el Tribunal Supremo de Puerto Rico resolvió que el estándar de revisión de la moción de desestimación se extiende a la solicitud de remedios alternativos. *Comisión v. González Freyre et al.,* 211 DPR 579, 614-615 (2023); *Cobra Acquisitions v. Mun. Yabucoa et al., supra,* págs. 400-401.

Por otro lado, la Regla 10.3 de Procedimiento Civil, *supra,* dispone que:

> Después que se hayan presentado todas las alegaciones, cualquier parte podrá solicitar al tribunal que dicte sentencia parcial o total por las alegaciones, sujeto a las disposiciones de la Regla 42.3 de este apéndice. **Si en una moción en la que se solicite sentencia por las alegaciones se exponen materias no contenidas en dichas alegaciones y éstas no son excluidas por el tribunal, la moción deberá considerarse como una solicitud de sentencia sumaria y estará sujeta hasta su resolución final a todos los trámites ulteriores dispuestos en la Regla 36** de este apéndice, y todas las partes tendrán una oportunidad razonable de presentar todo asunto pertinente a dicha moción conforme a lo provisto en la citada regla. (Énfasis suplido).

El Tribunal Supremo de Puerto Rico ha reiterado que, bajo este mecanismo, sobre la Regla 10.3 de Procedimiento Civil, *supra,* "se puede utilizar después de que se haya contestado la demanda y

cuando de las alegaciones surja que no hay controversia sustancial de hechos, de manera que la celebración de un juicio en su fondo para dilucidar la prueba resulte innecesaria". *W.M.M., P.F.M. et al. v. Colegio et al.,* 211 DPR 871, 884 (2023); (citas omitidas).

De igual forma, el Tribunal Supremo de Puerto Rico ha sostenido que puede proceder una moción de desestimación, acompañada de declaraciones juradas y documentos en todos aquellos asuntos jurisdiccionales. Incluso, esta documentación basta para demostrar, de manera *prima fascie* la existencia de prueba en apoyo sobre cuestiones jurisdiccionales. *Molina v. Supermercado Amigo, Inc.*, 119 DPR 330, 340, 343 (1987). Posteriormente, nuestro Tribunal Supremo en *Torres Capeles v. Rivera Alejandro,* 143 DPR 300, 309 (1997), reiteró que:

> La conversión de una moción de desestimación en una de sentencia sumaria, a tenor con esta regla, puede ocurrir cuando cualesquiera de las partes, el promovente o el promovido, someten materia que no formó parte de las alegaciones, tales como: deposiciones, admisiones, certificaciones y contestaciones a interrogatorios. **El tribunal tiene plena discreción para aceptar o no la materia evidenciaria que se acompaña. Esta discreción normalmente la ejerce tomando en consideración si la materia ofrecida y la conversión subsiguiente facilitarían o no la disposición del asunto ante su consideración.** Si de la materia ofrecida surge que el caso no se debería despachar sumariamente y que para su resolución se debería celebrar una vista en su fondo, el tribunal denegaría tanto la conversión de la moción de desestimación en una de sentencia sumaria, como la concesión de la desestimación. Si por alguna razón el tribunal decide no aceptar la materia presentada, el promovente puede presentar nuevamente la materia excluida como documentos que acompañen una moción de sentencia sumaria. (Énfasis suplido).

Así pues, se desprende del derecho antes expuesto que, el Tribunal Supremo de Puerto Rico no limitó la exposición de una moción de desestimación al amparo de la Regla 10.2(5) de Procedimiento Civil, *supra*, a la cual se incorporaron documentos cuya autenticidad no está en controversia para la consideración del tribunal.

**-B-**

Sabido es que, en nuestra jurisdicción la industria de seguros está revestida de un gran interés público debido a su importancia, complejidad y efecto en la economía y la sociedad. *W.M.M., P.F.M. et al. v. Colegio et al., supra, pág.*, 884; *Jiménez López et al. v. SIMED*, 180 DPR 1, 8 (2010). La Ley Núm. 77-1957, también conocida como "El Código de Seguros de Puerto Rico", según enmendada, 26 LPRA sec. 101 *et seq,* (en adelante, Código de Seguros), surge como respuesta a la necesidad de que "los asegurados estén mejor protegidos, [y] que la industria pueda desarrollarse con mayor facilidad". *Monteagudo Pérez v. ELA,* 172 DPR 12, 19 (2007). Nuestro Código de Seguros es de carácter anglosajón, y fue inspirado en los ante proyectos de los estados de Washington, Kentucky, Arizona y Michigan. *Íd.* pág. 19.

El Código de Seguros ha sido objeto de múltiples enmiendas, en aras de robustecerse con las disposiciones estatales y federales sobre la materia. Sin embargo, "[n]o hay duda alguna de que las pólizas que se ofrecen y venden dentro de la industria de seguros en Puerto Rico son, de ordinario, las pólizas modelos que venden las compañías de seguros estadounidenses". *Guerrido García v. UCB*, 143 DPR 337, 338 (1997). El Tribunal Supremo de Puerto Rico ha sido enfático en que, ese Foro "no ha descartado que al resolver aquellos pleitos de seguros en que se requiere interpretar las cláusulas de la póliza, se utilicen las normas del derecho angloamericano *sin descartar las normas del derecho civil*". *Domínguez v. GA Life*, 157 DPR 690, 701 (2002); (bastardilla en el original). Dicho lo anterior, la interpretación de las decisiones provenientes de los distintos estados en la materia de seguros es altamente persuasiva para nuestros tribunales. Sin embargo, de ninguna manera, resulta obligatoria.

Por su parte, el artículo 1.020 del Código de Seguros, 26 LPRA sec.102, define "*Seguro*" como: "Es el contrato mediante el cual una persona se obliga a indemnizar a otra o a pagarle o a proveerle un beneficio específico o determinable al producirse un suceso incierto previsto en el mismo". *San Luis Center Apts. Et al. v. Triple-S,* 208 DPR 824, 831 (2022). Como norma general, los contratos de seguros tienen como característica esencial la obligación de indemnizar, esto es, de resarcir un daño o perjuicio. *OCS v. CODEPOLA*, 202 DPR 842, 859 (2019). El propósito de todo contrato de seguros es la indemnización y protección en caso de producirse el suceso incierto previsto en este. 26 LPRA sec. 1125; *Echandi Otero v. Stewart Title*, 174 DPR, 355, 370 (2008).

Al momento de interpretar las cláusulas de un contrato de seguros, hay que recordar que estos contratos constituyen ley entre las partes, siempre y cuando cumplan con los requisitos de todos los contratos, a saber, que tengan objeto, consentimiento y causa, y que no sean contrarios a la ley y al orden público. *Coop. Ahorro y Cred. Oriental v. SLG*, 158 DPR 714, 723 (2003). El Tribunal Supremo de Puerto Rico ha resuelto que, "un contrato de seguros es un contrato de adhesión, donde una sola de las partes dicta las condiciones del contrato, las cuales ha de aceptar la otra parte contratante". *Feliciano Aguayo v. MAPFRE*, 207 DPR 138, 151 (2021). Es por ello que, el contrato de seguros debe interpretarse liberalmente a favor del asegurado para así sostener la cubierta por vía de una interpretación razonable. *SLG Francis-Acevedo v. SIMED,* 176 DPR 372, 386 (2009).

Esto necesariamente obedece a que, como los términos de las pólizas de seguro no son el producto de la negociación entre las partes, sino que son prefijados por el asegurador sin que el asegurado tenga la facultad de variarlos, el asegurador "tiene la obligación de hacer clara su intención; en otras palabras, viene

obligado a establecer en la póliza, de manera diáfana, los riesgos por los que viene obligado a responder". *Íd. pág. 386.* En atención a lo anterior, el más alto foro de Puerto Rico ha reconocido que, los términos de las pólizas de seguro "deben ser generalmente atendidos en su más corriente y usual significado, sin atender demasiado al rigor gramatical, sino al uso general y popular de las voces". *Id.* pág. 387.

Por lo tanto, ante la ausencia de ambigüedad en las cláusulas del contrato, éstas son obligatorias y su contenido constituye la ley entre las partes. *W.M.M., P.F.M. et al. v. Colegio et al., supra*, pág. 886. Ciertamente, "el asegurado tiene derecho a confiar en la cubierta de la póliza que se le ofrece leyendo las cláusulas del contrato a la luz del sentido popular de las palabras". *Serrano Picón v. Multinational Life Ins.*, 212 DPR 981 (2023).

Es decir, los contratos de seguro tienen como característica esencial la obligación de indemnizar. *OCS v. CODEPOLA, supra,* pág. 859. A su vez, los contratos de seguro son de extrema buena fe. Esto es, que se requiere un extremo grado de buena fe en las negociaciones precedentes a la perfección o consumación del contrato. (Citas omitidas). En armonía con lo anterior, "la buena fe es un precepto general de toda actividad jurídica y, como tal, se extiende a la totalidad de nuestro ordenamiento". *Feliciano Aguayo v. MAPFRE, supra,* pág. 140.

### -C-

Existen distintos tipos de seguro, por lo que podemos distinguir entre aquellos que van dirigidos a resguardar aspectos personales o pérdidas a la propiedad del propio asegurado, a diferencia de los seguros que le ofrecen protección frente a reclamaciones instadas en su contra por terceros que han sufrido daños por su causa. *Maderas Tratadas v. Sun Alliance et al.*, 185 DPR 880, 900 (2012). Esta última modalidad, conocida como seguro

de responsabilidad civil o pública, tiene como fin primordial garantizar al asegurado contra la responsabilidad civil en que pueda incurrir ante terceros por actos de los que sea legalmente responsable. En otras palabras, "**el asegurador se compromete, conforme a las condiciones estipuladas en el contrato, a indemnizar a un tercero por aquellos daños y perjuicios que le ha causado el asegurado**". *Íd.,* pág. 900. (Énfasis suplido).

Por otro lado, sobre las pólizas de seguros por responsabilidad contractual, a tenor con las disposiciones, del código de seguros, *supra*, también aplicamos las disposiciones del Código Civil de Puerto Rico. En esencia, se dispone que cuando los términos de un contrato son claros y no dejan duda sobre la intención de los contratantes, se estará al sentido literal de sus términos. 31 LPRA sec. 3471.[19] El Tribunal Supremo de Puerto Rico ha reiterado que, el Código Civil de Puerto Rico es fuente de derecho supletorio al interpretar correctamente un contrato de seguro. *López v. Atlantic Southern Ins. Co.*, 158 DPR 562, 569 (2003), citando a *Banco de la Vivienda v. Pagán Ins. Underwriters*, 111 DPR 1 (1981).

Es preciso recordar que "un seguro no responde por toda gestión imaginable del asegurado que pueda causar daño a terceros". (Énfasis suprimido en el original). *Maderas Tratadas v. Sun Alliance et al.*, *supra*, pág. 900, citando a *Meléndez Piñero v. Levitt & Sons of P.R.,* 129 DPR 521 (1991). Cónsono con lo antes expuesto, **'[l]a cubierta se circunscribe a determinadas actividades específicamente delimitadas en la póliza juntamente con las exclusiones allí dispuestas, donde se exceptúan ciertas actividades por las que no viene obligado a indemnizar'**. *Íd.,* pág. 900. (Énfasis suplido). Por consiguiente, para

---

[19] Hacemos referencia al Código Civil de de Puerto Rico, 1930, 31 LPRA 3471, hoy derogado por la Ley Núm. 55-2020, 31 LPRA sec. 5311, por ser de aplicación al momento de los hechos.

precisar el alcance de la protección que ofrece una póliza, resulta necesario evaluar si el contrato contiene cláusulas de exclusión que exceptúen determinados eventos, riesgos o peligros de la cubierta". *W.M.M., P.F.M. et al. v. Colegio et al., supra,* pág. 889; *Rivera Matos et al. v. Triple-S et al.,* 204 DPR 1010, 1021 (2020).

Ahora bien, el principio de hermenéutica rige la interpretación que impone el Código de Seguros**.** Esta norma no tiene el efecto de obligar a los tribunales a interpretar a favor del asegurado una cláusula que claramente le da la razón al asegurador cuando su significado y alcance sea claro y libre de ambigüedad. *Serrano Picón v. Multinational Life Ins., supra; S.L.G. Francis-Acevedo v. SIMED, supra, págs. 387-388; Echandi Otero v. Steward Title, supra, pág. 370.* En cuestión de hermenéutica, el Código de Seguros dispone que los contratos de seguro se interpretan globalmente, a base del conjunto total de sus términos y condiciones, según se expresen en la póliza y según se hayan ampliado, extendido o modificado por aditamento, endoso o solicitud adherida a la póliza y que forme parte de esta. *Natal Cruz v. Santiago Negrón et al.,* 188 DPR 564, 576-577 (2013).

A su vez, si los términos del contrato de seguro son claros y no dejan duda sobre la intención de los contratantes, se estará al sentido literal de sus cláusulas. Sin embargo, al reconocer que el contrato de seguro lo redacta en su totalidad el asegurador, las cláusulas oscuras o ambiguas se interpretarán a favor del asegurado. Por el contrario, en ausencia de ambigüedad, las cláusulas del contrato son obligatorias. *Íd.* págs. 565-566.

Por otro lado, las cláusulas de exclusión limitan la cubierta de una póliza de seguro al exceptuar determinados eventos, riesgos o peligros. *Viruet et al. v. SLG Casiano-Reyes,* 194 DPR 271, 279 (2015). Al determinar cuáles son los riesgos cubiertos por una póliza de seguro es necesario considerar si en el contrato figura una

cláusula de exclusión. **Estas cláusulas tienen el propósito de limitar la cubierta establecida en el acuerdo principal y disponen que el asegurador no responderá por determinados eventos, riesgos o peligros**. Por dicha razón, el máximo foro de Puerto Rico ha resuelto que "las exclusiones se han de *interpretar restrictivamente* a favor del asegurado, para así cumplir con el propósito de todo seguro de ofrecer la mayor protección a la persona asegurada". *Rivera Matos et al. v. Triple-S et al., supra*, pág. 1021; *Echandi Otero v. Stewart Title, supra*, págs. 370-371. *Monteagudo Pérez v. E.L.A., supra,* pág*. 21.* (Bastardillas suprimidas, énfasis suplido).

No obstante, y a tenor con la norma general, si una cláusula de exclusión aplica claramente a determinada situación, la aseguradora no está obligada a responder por los riesgos expresamente excluidos. *Echandi Otero v. Stewart Title, supra*, pág. pág. 371. Finalmente, debemos destacar que, **"corresponde al asegurado[,] el peso de establecer que su reclamación está comprendida dentro de las disposiciones del contrato de seguro, mientras que es la aseguradora quien tiene que evidenciar que aplica alguna exclusión"**. *Rivera Matos et al. v. Triple-S et al., supra*, pág. 1022. (Énfasis suplido).

### -III-

La parte apelante acude ante este Tribunal solicitando que revoquemos la *Sentencia Parcial* emitida por el Tribunal de Primera Instancia de Caguas, por no estar conforme con la determinación del foro primario. Plantea ante nos, cuatro (4) señalamientos que podremos dividirlos y resolver conjuntamente. En primera instancia, el Condominio expone que (1) erró el foro de origen al desestimar con perjuicio la demanda contra tercero incoada contra Liberty al amparo de la Regla 10.2(5) de Procedimiento Civil, *supra*; (2) de igual forma incidió al acoger la precitada moción al amparo de

dicha regla y no acogerla como una solicitud de sentencia sumaria al amparo de la Regla 36 de Procedimiento Civil, 32 LPRA AP. V. R. 36, toda vez que, la moción presentada con prueba documental por Liberty no cumplía con los requisitos de una sentencia sumaria. *No le asiste la razón.*

El 1 de abril de 2022, Liberty presentó una moción al amparo de la Regla 10.2(5) de Procedimiento Civil, *supra.* En esencia, Liberty expuso que las pólizas expedidas a favor del Condominio, DGL-PR-754822-1 y 1000294370-01 no cobijan lo alegado por la parte apelante por lo que deja de exponer la reclamación que justifique un remedio. A su moción le acompañó la documentación de las precitadas pólizas, sobre las cuales no existe controversia alguna en cuanto a la autenticidad de ellas. Por su parte, el Condominio arguyó que no procedía acoger la moción de desestimación presentada por Liberty, porque no todas las alegaciones realizadas se basaban en el incumplimiento contractual. Adicionalmente, señaló que procedía acogerse como una solicitud de sentencia sumaria, y que obviamente se incumplía con los requisitos de la Regla 36 de Procedimiento Civil, *supra.*

El Tribunal de Primera Instancia tomó conocimiento de las pólizas antes dichas y examinó el contenido de estas. En esencia, destacó que la póliza **DGL-PR-754822-1**, dispone en su cubierta a lo siguiente:

**SECTION I – COVERAGES**

**COVERAGE A – BODILY INJURY AND PROPERTY**

**DAMAGE LIABILITY**

**1. Insuring Agreement**
**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. [...]
**b.** This insurance applies to "bodily injury" and "property damage" only if: **(1) The "bodily injury" or "property damage" is caused by an "occurrence" that**

**takes place in the "coverage territory**" [...] (Énfasis suplido).

**2. Exclusions**

This insurance does not apply to:

[...]

**b. Contractual Liability**

"Bodily injury" or **"property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement.** This exclusion does not apply to liability for damages:

**(1)** That the insured would have in the absence of the contract or agreement; or (Énfasis suplido).

**(2**) **Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement.** Solely for the purposes of liability assumed in an "insured contract", reasonable attorneys' fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", [...].[20] (Énfasis suplido).

Adicionalmente, la Sección V de la póliza **DGL-PR-754822-1** contiene varias definiciones, entre ellas, las siguientes:

### SECTION V – DEFINITIONS

**13.** "**Occurrence**" means an **accident**, including continuous or repeated exposure to substantially the same general harmful conditions.

[...]

**17.** "Property damage" means:

    **a.** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

    **b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it**.[21](Énfasis nuestro).

De manera que, para que sean exigibles las disposiciones de la póliza antes expuesta, necesariamente deben concurrir tanto en sus disposiciones de cobertura y definiciones. Es decir, el daño a ser indemnizado debe surgir de una "ocurrencia" o propiamente un accidente. Sin embargo, si el daño está excluido, la cobertura no aplica y la aseguradora no está obligada a pagar por los daños que se le reclaman.

---

[20] Apéndice 92 del Recurso de Apelación, pág. 495.

[21] *Íd.,* pág. 509.

Por otro lado, en la póliza **1000294370-01**, el Condominio, al igual que Travelers reconocieron que esta, era del tipo *"umbrella"*. Es decir, su propósito es cobijar los excesos de aquellos daños que no estén cobijados por el contrato de seguros principal, siempre que se exceda de una cantidad pactada. Examinamos:

**INSURING AGREEMENTS**

I. COVERAGE
We will pay on behalf of the "Insured" those sums in excess of the "Retained Limit" that the "Insured" becomes legally obligated to pay by reason of liability imposed by law or assumed by the "Insured" under an "Insured contract" because of "bodily injury," "property damage," "personal injury," or "advertising injury" that takes place during the Policy Period and **is caused by an occurrence**" happening anywhere. The amount we will pay for damages is limited as described below in the Insuring Agreement Section II. LIMITS OF INSURANCE. (Énfasis nuestro).

**II. LIMITS OF INSURANCE**

[…]
B. The General Aggregate Limit is the most we will pay for all damages covered under the **Insuring Agreement** in Section **1**., except:
[…]
2. Coverage included in the policies listed in the Schedule of Underlying insurance to which no underlying aggregate limit applies. **The amount stated on the declarations as the General Aggregate Limit is the most[,] we will pay for all damages arising out of any "bodily injury," "property damage," "personal injury," or "advertising injury" subject to an aggregate limit in the "underlying insurance." The General Aggregate Limit applies separately and in the same manner as the aggregate limits in the "underlying insurance."**[22] (Énfasis nuestro).

Como observamos de la disposición antes expuesta, la cobertura está limitada a que el asegurador tenga que responder por el exceso del límite estipulado, en este caso la suma es equivalente a $2,000,000.00.

Ahora bien, como surge de las alegaciones de las demandas y contestaciones, el Condominio aduce que Liberty responde porque en lo que a ellos respecta, están reclamando daños causados por un

---

[22] Apéndice 92 del Recurso de Apelación, pág. 533

incumplimiento contractual. En particular, nos solicita especial atención en los incisos Sexta, Séptima y Octava de la demanda enmendada.[23] En adición, sostiene que estas alegaciones en nada se relacionan con el incumplimiento de contrato que se mencionan en otros incisos, sino que son daños sufridos por incumplimiento contractual. En esencia, estima los daños en $927,755.00 aproximadamente. Por su parte, Liberty establece que la póliza DGL-PR754822 es una póliza de ocurrencia que no se extiende hasta incumplimiento contractual y que la póliza 10000294370, solo cubre cantidades en exceso de $2,000,000.00, siempre y cuando la póliza principal sea de aplicabilidad.

El foro de instancia sopesó todas las mociones antes expuestas y analizó las cláusulas antes esbozadas. Tras un análisis del derecho y de las alegaciones en controversia, coincidimos con el Tribunal de Primera Instancia en que las alegaciones contenidas en la *Demanda Contra Tercero*, al igual que la *Reconvención Enmendada*, "no activaron la cobertura de las pólizas". [24] Como discutiremos adelante, aún dando por ciertas las alegaciones, no había cobertura bajo las pólizas antes expuestas, ya que los daños reclamados son contractuales, y estos están excluidos de la póliza. Por lo que, actuó correctamente el foro primario al declarar Ha Lugar la petición de desestimación presentada por Liberty al amparo de la Regla 10.2 (5) de Procedimiento Civil, *supra.*

Por otro lado, concluimos que, el acumular las antedichas pólizas, no cambia la naturaleza del remedio solicitado al amparo de la Regla 10.2 (5) de Procedimiento Civil, *supra*, toda vez que, según ha resuelto nuestro Tribunal Supremo, "[e]l tribunal puede suplementar los hechos contenidos en las alegaciones considerando documentos anejados o incorporados a éstas y hechos susceptibles

---

[23] Recurso de Apelación, pág. 533
[24] Apéndice 158 del Recurso de Apelación, págs. 708-721.

de conocimiento judicial". *W.M.M., P.F.M.et al. v. Colegio et al., supra,* pág. 884. (citas omitidas). Siendo innecesario resolver al amparo de la Regla 36 de Procedimiento Civil, *supra*, resulta forzoso concluir que *no se cometieron* los primeros dos (2) errores señalados.

Por otra parte, los errores tres (3) y cuatro (4) los discutiremos conjuntamente. El Condominio expone que incidió el foro primario al determinar que todas las alegaciones contenidas en la demanda contra Liberty se fundamentan en incumplimiento contractual, en referencia a CAC, cuando en el resto de las alegaciones se establece todo lo contrario. Por último, señala la parte apelante que erró el foro de primera instancia cuando determinó que las alegaciones eran por incumplimiento de contrato, cuando son reclamaciones de daños. Aunque en efecto, en la demanda se presentan ambas alegaciones de manera separada. Veamos.

De las alegaciones contenidas de los incisos cinco (5) y siete (7) de la demanda enmendada se desprende lo siguiente:

> 5. Finalmente, entre la Junta de Directores y/o el Consejo de Titulares y el demandante se estableció el alcance y presupuesto aprobado por el Consejo de Titulares y/o la Junta de Directores del Consolidated Mall y **se llegó a un acuerdo contractual con la empresa demandante.** Los trabajos contratados se redujeron en un contrato escrito entre ambas partes e incluían las partidas que se desglosan a continuación. (Énfasis suplido).
>
> Las partidas en detalle fueron:
> 1. Área A: Exterior de edificio #1 (Edificio C)
> • Reparación de fachada exterior - 200 pies cuadrados
> • Reparación de puertas y ventanas – reparación de puertas interiores y ventanas del atrio central del Edificio C
> • Pintura exterior del edificio
>
> 2. Área B: Techo del edificio #1 (Edificio C)
> • Remoción del tratamiento del techo existente incluyendo acarreo y disposición del mismo
> • Reemplazo de sistema de tragaluces y cristales
> • Construcción de bases para unidades de A/C de las áreas comunes
> • Lavado a presión del techo luego de remover todo el tratamiento del techo
> • Reparar aperturas de tuberías de máquina de A/C del techo
> • Reemplazo de drenajes y accesorios

- Reparación de juntes de vigas de hormigón del techo
- Depósito de hormigón liviano para corregir las pendientes del techo para la instalación del nuevo tratamiento del techo
- Instalación de nuevo tratamiento del techo de tipo membrana modificada con sus accesorios.

3. Área C: Interior del edificio #1 (Edificio C)
- Reemplazo de paneles de metal de los pasillos por facciones en los laterales:
27,977 pies cuadrados
- Reemplazo de lámparas interiores: 43 cada una
- Reemplazo de rótulos de emergencia: 5 cada uno
- Reemplazo de unidades de aire acondicionado, ductos y difusores
- Pintura interior del edificio en áreas comunes

4. Área D: Reparación de techo colapsado del edificio #1(Edificio C) local Dra. Díaz
- Remoción, acarreo disposición de escombros
- Reemplazo de losa de techo
- Reemplazo de losa de piso
- Reparación de paredes
- Trabajo de pintura
- Instalación de techo acústico
- Instalación de lámparas y trabajo eléctrico
- Reparación de puerta de entrada
- Reemplazo de tubería de sprinkler

5. Área E: Interior y exterior del edificio #2 (Edificio A)
- Reparación de techo de metal
- Pintura exterior del edificio
- Pintura interior del edificio en áreas comunes [sic]

6. Área F: Interior y exterior del edificio #3 (Edificio B)
- Pintura exterior del edificio
- Pintura interior del edificio
- Reemplazo de lámparas en pasillos: 4 cada uno

7. Área G: Acceso a edificios
- Demolición y disposición de aceras y verjas
- Reconstrucción de aceras: 30 metros cuadrados
- Reparación de verjas de cyclone fence
- Reparación de verja ornamental
- Reemplazo de portón de cyclone fence
- Reemplazo de portón ornamental
- Reconstrucción de área verde

8. Área H: Otros costos
- Reemplazo de postes de aluminio
- Walking path for roof
- Roof access stair with gate
- Limpieza del sistema pluvial obstruido
- Verificación de sistema de bombas de incendio
- Evaluación del sistema contra incendios de los edificios A, B, C.

[…]

7. Lo anterior se explicó luego de que la parte demandante observara, inspeccionara y advirtiera a los

demandados, que previo al evento del huracán, todo el techo de los edificios estaba deteriorado, toda vez que se podían apreciar las filtraciones de agua y los sistemas de recolección provisionales que habían instalado en el techo en toda la estructura de los edificios, lo cual era evidente a simple vista.

El Condominio sostiene que específicamente de las alegaciones antes expuestas, al igual que el resto de la demanda enmendada, establecen el incumplimiento contractual de CAC. En específico, la parte apelante aduce que, en los incisos antes esbozados, son reclamaciones de incumplimiento contractual, pero que, en efecto, también se reclaman daños a consecuencia de ello. Por su parte, la postura de la parte apelada es que en efecto esos daños son producto del incumplimiento contractual que está expresamente excluido en la sección I 2 (b), antes expuesta.

Tras un análisis de las alegaciones plasmadas en la *Demanda* contra Liberty, no se desprende que las actuaciones de CAC hayan sido producto de un accidente, sino como consecuencia de un incumplimiento contractual. Como ya explicamos, la póliza en cuestión permite cobertura sobre daños que surjan a consecuencia de un accidente. Sin embargo, no es lo ocurrido en el caso de marras. Coincidimos con el foro primario en cuanto a que los daños reclamados están exentos de indemnización, según los términos de la póliza. Toda vez que los daños sufridos por el Condominio son exclusivamente producto del incumplimiento contractual de CAC, no procede imponerle responsabilidad a Liberty para que ofrezca cubierta a la parte apelante en ese sentido. *No se cometieron los errores señalados.*

-*IV*-

Por los fundamentos antes expuestos, los cuales hacemos formar parte de este dictamen, confirmamos *la Sentencia Parcial* apelada y se devuelve al Tribunal de Primera Instancia para la

continuación de los procedimientos conforme a lo dispuesto con esta *Sentencia.*

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda.  Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones